ELLIS v. INSURANCE CO.

$$\begin{array}{cc} 100 & 177 \\ 110 & 155 \end{array}$$

(*Nashville.* . December 15, 1897.)

1. COURT OF CHANCERY APPEALS. *Finding of, as to domicile conclusive.*

The finding of the Court of Chancery Appeals upon the question of domicile is a finding of fact that is conclusive, and not subject to review by this Court. (*Post, pp. 180, 181.*)

Case cited and approved: Bank v. Evans, 95 Tenn., 706.

2. ADMINISTRATION. *Foreign assets.*

The assets, consisting of policies of life insurance, of the estate of a deceased nonresident intestate, cannot be drawn into this state for recovery by suit and for distribution under our statutes, by the device of having an administrator appointed in this state to obtain possession of the policies and bring them into the state. (*Post, pp. 181–186.*)

Cases cited and approved: Goodlet v. Anderson, 7 Lea, 288; St. John v. Hodges, 9 Bax., 338; Jones v. Marable, 6 Hum., 116; Carr v. Lowe, 7 Heis., 84; McCollum v. Smith, Meigs, 342; 88 Am. Dec., 298.

---

FROM SUMNER.

---

Appeal from Chancery Court of Sumner County. J. S. GRIBBLE, Ch.

J. W. BLACKMORE and DISMUKES & DISMUKES for Complainant.

STOKES & STOKES and L. J. PARDUE for Defendants.

16 P—12

McALISTER, J.   The complainant filed this bill
in the Chancery Court of Sumner County in her
own right as widow and as administratrix of her de-
ceased husband, to enforce the collection of certain
policies of insurance issued upon the life of her
husband, and payable at his death to his executors,
administrators, or assigns.   Irby T. Ellis, the hus-
band of complainant, died intestate in March, 1896,
at Selma, Alabama.   Upon the death of her hus-
band, the complainant returned to Sumner County,
Tennessee, where she had formerly resided, took out
letters of administration upon his estate in the County
Court, and filed this bill in the Chancery Court of
Sumner County, Tennessee, to collect this insurance.
Complainant alleged in her bill that the policy of
insurance issued by the Northwestern Insurance Com-
pany was not in her possession, but was held as
collateral security by one Marshall, at Selma, Ala-
bama.   The Court of Chancery Appeals find as a
fact that complainant acquired possession of this pol-
icy by sending her attorney to Selma and paying
off the debt to the pledgee, who surrendered the
policy to her attorney, and the latter thereupon
brought it to Tennessee.

On April 7, 1896, the two policies issued by the
New York Life Insurance Company were also ob-
tained by complainant's attorney, who went to Selma
and paid off certain debts for the payment of which
these policies had been hypothecated.   It is proper
to say that when these latter policies were surren-

dered to complainant's attorney, no administrator had been appointed upon the estate of Irby T. Ellis, in Alabama. R. P. Safford qualified as administrator of said estate at Selma, on May 26, 1896. Complainant qualified as administratrix in Sumner County, Tennessee, on June 11, 1896. The contest presented upon the record is between the widow and the foreign administrator over the proceeds of these policies. The Northwestern Mutual Life Insurance Company was the only defendant to the bill filed by the widow and administratrix in Sumner County, Tennessee. The foreign administrator and the New York Life Insurance Company became parties to said proceedings by special agreement, entered into between the parties. It was agreed, first, that the injunction should be dissolved, and that said Northwestern Mutual Life Insurance Company should pay the amount of its policy ($2,038) into the hands of the Clerk and Master of the Court, which was done, and the company was discharged from further liability. It was further agreed that in order to settle all questions in one suit, R. P. Safford, the Alabama administrator, be made a party defendant and enter his appearance, which was accordingly done. R. P. Safford, the Alabama administrator, claims that Irby T. Ellis, at the time of his death, was a citizen and domiciled in the State of Alabama, and that under the laws of said State policies of life insurance, payable to the estate of deceased, go to his creditors, and that he is entitled to the proceeds of

said policies for the benefit of creditors in Alabama. Complainant, Sallie Ellis, insists that at the date of his death her husband was a resident and citizen of the State of Tennessee, and that under the laws of this State the proceeds of said policies would inure to the sole and separate use of the widow, free from the claims of creditors, no children having been born to them.

The main question presented upon the record was in respect of the residence and domicile of the said Irby T. Ellis, whether it was in the State of Tennessee or in the State of Alabama. However, it was insisted by counsel for Mrs. Ellis that, independently of the question of Irby T. Ellis' domicile, that the New York policies, being in the possession of Mrs. Ellis at the time she qualified as administratrix in the State of Tennessee, and being personal property, they should be distributed according to the laws of Tennessee. And it is further insisted, if she is entitled to recover these policies, she is also entitled to recover the Northwestern policy under the agreed decree in this cause.

The Chancellor decreed in favor of complainant, Mrs. Sallie Ellis. The Court of Chancery Appeals found, as a fact, that Irby T. Ellis, at the time of his death, was domiciled in the State of Alabama, and that his personal estate should be distributed according to the laws of that State. That Court reversed the decree of the Chancellor, and adjudged that the Alabama administrator was entitled to the

proceeds of all the policies. Complainant appealed, and the first assignment made on her behalf is that the Court of Chancery Appeals erred in their finding as respects the domicile of Irby T. Ellis. It is insisted that this finding is a conclusion of law from facts ascertained by them, which is subject to review and reversal by this Court. The Court of Chancery Appeals very fully and correctly state the rules of law by which they were guided in this investigation of fact, and their finding is not subject to review by this Court. The element of intention enters largely into the question of domicile, and the ascertainment of this intention is a matter exclusively within the province of that Court. It is not a conclusion of law, but an inference of fact, to be drawn from the evidence in the record. *Bank* v. *Evans*, 11 Pickle, 706.

The second assignment is that an administrator of the deceased holder of a life policy, appointed in the State where the policy is, and having possession of the policy, is entitled to recover the amount due thereon, as against an administrator appointed in another State, including that in which the decedent resided at the time of his death. Counsel cite, in support of this proposition, *Smith* v. *New York Ins. Co.*, 67 Fed. Rep., 694. That was an action at law brought by Mrs. Eudora V. Smith in the United States Circuit Court for the Northern District of California, as administratrix with the will annexed of the estate of Dr. Wm. T. Smith, deceased, to

recover from the New York Life Insurance Company
the sum of $5,000, alleged to be due on a policy
of life insurance. The record showed that Dr. Smith
died at Chicago, Ill. At the time of the issuing of
the policy, and at the time of his death, he was a
resident of the State of Illinois. He left surviving
him a widow, a resident of San Francisco, Cal., and
two sons. Dr. Smith had formerly lived in Cali-
fornia, and had left that State on account of finan-
cial and domestic difficulties between himself and
wife. Prior to his death, Dr. Smith had sent the
policy of insurance for $5,000, together with the
sum of $5,000 in money, to California, the insur-
ance policy to be held in trust by his wife for the
benefit of their minor son, and the money to be
paid the wife when she obtained a divorce. No di-
vorce was ever granted. After the death of Dr.
Smith, his counsel in California, to whom the policy
had been sent, delivered it to Mrs. Smith as the
special administratrix of her husband's estate. It
further appears that, three days prior to his death,
Dr. Smith, being indebted to one J. B. Murphy,
of Chicago, executed and delivered to him at said
city, a transfer, among other choses in action, of
the policy of insurance for $5,000, then in the hands
of Dr. Smith's attorney in California. This docu-
ment was executed and delivered to and accepted by
J. B. Murphy in payment of an indebtedness of
Smith to him. Smith afterwards executed a will,
wherein he bequeathed to the said Jno. B. Murphy,

to be first paid out of his estate, the sum of $3,400, and various other legacies.   The executor named in the will declined to act, and thereupon letters of administration upon said estate were issued to the Jennings Trust Company, a corporation existing under the laws of the State of Illinois.   The trust company commenced an action against the New York Life Insurance Company, in the Circuit Court of Cook County, Illinois, to collect the amount of the $5,000 policy, which action, it was claimed, was prosecuted for and on behalf of the said J. B. Murphy.   The policy in question has never been paid. Mrs. Smith's action, as already stated, was commenced in the Circuit Court for the Northern District of California against the New York Life Insurance Company, and this company interposed, as a defense, the proceedings in Illinois, ᐧand insisted that the trust company and Murphy should be made parties.   Judgment was rendered in favor of Mrs. Smith.

The Court, upon these facts, held: First, that the sale or assignment of the policy by Dr. Smith to Murphy did not vest in the latter any interest, legal or equitable, that would authorize him to bring and maintain an action thereon against the insurance company;   that to constitute such an assignment there must be, first, an intention to assign the debt or chose, and, secondly, this intention must be followed by a delivery of the chose to the assignee. Again, the Court said, the policy is personal property, and was in the State of California.   The

issuance of letters of administration to Mrs. Smith in Calfornia was legal. She had possession of the policy, and was entitled to recover the money thereon. The law is well settled that the administratrix in California, as against the Jennings Trust Company, or any other administrator in any other State, is entitled to recover the money from the insurance company. It will be observed that the policy involved in that case had been sent by Smith to his counsel in California, to be delivered to his wife, to be held in trust by her for the benefit of his minor son, and, at the date of Smith's death, the policy was in California and not in Illinois, the domicile of Smith. It is well settled that where the intestate, at the time of his death, owns property in a State other than that of his domicile, administration must be taken out in order to collect the funds for the benefit of the estate. It appears from the record in this case, that, at the date of Irby T. Ellis' death, all three of said policies were in the State of Alabama, and constituted a part of the assets of his estate.

In the case of *Goodlet* v. *Anderson*, 7 Lea, 288, the Court said, viz.: "We held, in the case of *St. John* v. *Hodges*, 9 Bax., 338, after full argument and review of authorities, that notes of the character of the one in question are *bona notabilia* at the domicile of the intestate's residence, when left there at the time of his death, and that administration taken out in another State, where the debtor

resides, does not draw thereto the title or right to the notes unless they actually come to the hands of such administrator.''

The Court of. Chancery Appeals finds "that all of these insurance policies were taken out at Selma, Ala., and all were there in the hands of different parties for safe-keeping, or as collateral security, at the time of Ellis' death. The Northwestern policy, about which this suit was first brought, was, at the time of the death of Ellis, in possession of Mr. Marshall, at Selma, who, after Saffold qualified, delivered it to him, but who afterwards, at Marshall's request, redelivered it to Marshall, in whose hands it was at the time the original bill was filed in this case. After that Marshall delivered it to the attorney of Mrs. Ellis, who brought it to this State, pending the present suit. The two New York Life Insurance Company policies were also obtained by counsel for Mrs. Ellis April 7, 1896, while on a visit to Selma. While we think it extremely likely that Mr. Dismukes brought these two policies into this State immediately after their procurement by him in April, 1896, there is no proof on this subject, and we do not know how the fact is nor where they were when Mrs. Ellis was appointed administratrix, nor when she brought this suit. So that on these facts, this suit is simply an effort on the part of a Tennessee administratrix to draw into this State for administration, and out of its proper sphere, an asset to which she had no title, and

which was not here as a fact, nor under any theory of law." We agree with that Court that this cannot be done without destroying all principles of comity between the two jurisdictions. Moreover, we are of opinion that complainant, as widow, is not entitled to the proceeds of these policies, for wherever administered the distribution must be made under the laws of Alabama, the domicile of the deceased. Pritchard on Wills and Administration, Sec. 54, p. 59; *Jones* v. *Marable*, 6 Hum., 116; *Carr* v. *Lowe*, 7 Heis., 84; *McCollum* v. *Smith*, Meigs, 342; *Peterson* v. *Chemical Bank*, 88 Am. Dec., 298.

In conclusion, we wish to say that we fully recognize the principle so well settled that a foreign executor or administrator or receiver cannot collect assets, or sue or be sued in his representative capacity in this State, but we think this question is entirely eliminated from the case by the agreed decree, by which the Alabama administrator is made a party defendant and allowed to set up his claim to the policies.

The decree is affirmed.