IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1904.

MRS. LOUIE H. KEITH, *Exx.*, *et al. v.* RUSSELL A. ALGER.

### (*Nashville.* December Term, 1904.)

1. **JUDGMENTS AND DECREES.** Of federal court set aside in State court for fraud.

A State court may entertain a bill to restrain the enforcement of a judgment or decree of a federal court on the ground that it was procured by fraud; and federal courts may entertain such a cause of action against a judgment or decree of a State court. (*Post, p.* 21.)

2. **SAME.** Bill to set aside, for fraud, is an independent right of action.

A bill to restrain the enforcement of a judgment or decree on the ground that it was procured by fraud is an independent right of action that does not involve a retrial of the issues disposed of in the former cause. (*Post, p.* 21.)

3. **SAME.** Fraud must be extrinsic or collateral to issues in former suit to authorize setting aside the judgment or decree therein.

The fraud for which a judgment or decree may be set aside must be some fraud extrinsic or collateral to the issues tried and the

.114 Tenn—1 (1)

questions examined and determined in the suit in which the judgment or decree complained of was rendered. (*Post, p.* 21.)

Cases cited and approved: Gaugh v. Henderson, 2 Head, 628; Smith v. Harrison, 2 Heis., 230; Mathews v. Massey, 4 Bax., 450-458; Talbot v. Provine, 7 Bax., 502-507 et seq.; Mabry v. Churchwell, 1 Lea, 416, 432; Haskins v. Rose, 2 Lea, 708; McDowell v. Morrell, 5 Lea, 278; Boro v. Harris, 13 Lea, 36; Pyett v. Hatfield, 15 Lea, 473; Williams v. Pile, 104 Tenn., 273; Noll v. Chattanooga Co. (Chy. App.), 38 S. W., 287; Pico v. Cohn, 91 Cal., 129, 25 Am. St. Rep., 159-171, note; Marshall v. Holmes, 141 U. S., 589; United States v. Throckmorton, 98 U. S., 65, 66; Surety Co. v. Bank, 56 C. C. A., 657; Railroad v. Wells, 54 Am. St. Rep., 218-261, note; Fealey v. Fealey (Cal.), 43 Am. St. Rep., 111-118; Friese v. Hummel (Or.), 46 Am. St. Rep., 610-613; Camp v. Ward (Vt.), 60 Am. St. Rep., 929-933; Merriman v. Walton (Cal.), 30 L. R. A., 786, note; Dowell v. Goodwin (R. I.), 51 L. R. A., 873; Jarrett v. Goodnow (W. Va.), 32 L. R. A., 321-329; Farwell Co. v. Hilbert (Wis.), 30 L. R. A., 235-242, note.

Cases cited, distinguished, and approved: Randall v. Payne, 1 Tenn. Chy., 137, 142 et seq.; Maddox v. Apperson, 14 Lea, 596; Marshall v. Holmes, 141 U. S., 589.

4. SAME. Same. Instances of extrinsic or collateral fraud that will authorize setting aside a judgment or decree.
The extrinsic or collateral fraud that will authorize the setting aside of a judgment or decree may be the keeping of the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*Post, pp.* 22-26.)

Cases cited and approved: Pico v. Cohn, 91 Cal., 129; United States v. Throckmorton, 98 U. S., 65, 66.

Keith v. Alger.

5. **SAME. Same. Same. To set aside a judgment or decree, a meritorious case and injury by fraud must be shown by the complaining party.**

In order to entitle a complainant to relief under a bill to set aside a judgment or decree on the ground that it was obtained by fraud, it must appear that such complaining party has a meritorious case, or had a meritorious defense to the original cause of action, and that he was injured by the fraud. (*Post, pp.* 26-28.)

Cases cited and approved: Mathews v. Massey, 4 Bax., 450-458; Railroad v. Wells (Ark.), 33 S. W., 208, 30 L. R. A., 560, 54 Am. St. Rep., 222; White v. Crow, 110 U. S., 183.

6. **PRACTICE. No objection to conclusiveness of proceedings in federal courts under practice different from that of State courts.**

The conclusiveness of the proceedings in the United States circuit court of appeals in an action between the parties in the State court is not affected by the fact that the proceedings were not conducted according to the forms of practice obtaining in the State courts in similar matters. (*Post, p.* 29.)

Cases cited and approved: Hilton v. Guyott (C. C.), 42 Fed., 252; Telford v. Brinkerhoff, 163 Ill., 443.

7. **RES ADJUDICATA. Federal court's denial of petition to file a bill of review for newly discovered evidence showing fraud is res adjudicata against bill in State court to set aside judgment for fraud.**

Where the application by petition in the federal court for leave to file a bill of review for newly discovered evidence showing that the judgment was obtained by fraud was denied, such denial is *res adjudicata* as to the right of petitioners to maintain a bill in the State court to set aside a judgment or decree of such federal court on the ground that it was obtained by fraud, though the truth of the matter contained in the petition filed in the federal court was settled against petitioners on *ex parte* affidavits, according to the forms and practice obtaining

in the federal courts, without opportunity of examining and cross-examining the witnesses upon the matters involved, where the action of the federal court was based on the absence of any real or legal injury inflicted upon the petitioners by the fraud, and the want of any real equity in their claim, which is the basis of the State court's action in dismissing the bill to set aside the judgment or decree of the federal court on the ground that it was obtained by fraud. (*Post, pp.* 28-30.)

Cases cited and approved: Jarrett v. Goodnow, 32 L. R. A., 326-329, note; Merriman v. Walton, 30 L. R. A., 793.

FROM FRANKLIN.

Appeal from the Chancery Court of Franklin County. —T. M. McCONNELL , Chancellor.

STATEMENT OF FACTS MADE BY MR. JUSTICE NEIL.

The bill in this case was filed by the complainant as executrix of John F. Anderson, and by certain other persons as his devisees and heirs at law, for the purpose of setting aside, for fraud, a judgment obtained against them in the circuit court of the United States, sitting at Nashville.

The bill alleged that John F. Anderson died in Franklin county about January 1, 1894, the owner of certain real estate, which he devised to the complainants.

The bill further alleges that prior to January 11, 1889, the said Anderson was the owner of 14,804 acres of mountain lands, and on said date executed to Sheri-

Keith v. Alger.

dan, Green & Company, a real estate firm then doing business in Chattanooga, this State, an option and title bond, in which he obligated himself, for a consideration of $500 cash paid, to make conveyance to the said firm of said mountain lands on the payment to him of $4 per acre therefor; that subsequently, on March 4, 1889, said Anderson executed to the defendant, Alger, a general warranty deed, conveying to him the lands above mentioned, for the recited consideration of $51,814 in cash, and three notes, due in one, two, and three years, aggregating $44,412, and one other note for $7,402, making altogether $103,628; that out of the consideration thus paid by Alger the said Anderson was paid by Sheridan, Green & Company $4 per acre for all of the land conveyed, less $500 paid at the time of the execution of the option, the total amount received being less than $60,000.

It is further alleged that on August 11, 1894, the defendant, Alger, filed a bill in the United States circuit court for the middle·district of Tennessee against Sheridan, Green & Company and the present complainants; that in this bill Alger alleged that previous to the 4th day of March, 1889, he had agreed to purchase the 14,804 acres of land at the price of $7 per acre, amounting in all to $103,628; that on the 4th day of March, 1889, he closed the contract, and took from Anderson and wife a warranty deed to the property; that the purchase was made through Sheridan, Green & Company, as agents of Anderson; and that the said Alger was in-

duced to buy the land by fraud and imposition perpetrated by the said Anderson and his agents, Sheridan, Green & Company, by several means, as follows, viz.:

"That they bribed and paid a large sum to one A. J. Freer, agent and timber expert of said Alger, who was sent to examine the timber on said lands, and who, on account of that bribe, falsely reported that he found timber thereon in quantity and quality as represented, whereas, in truth, there was but little timber of any value on said lands; that they procured false surveys to be made, including a large acreage of land to which Anderson had no title; that they procured the face of certain coal veins to be painted, whereby another agent of the said Alger, who was sent to examine the lands, was induced to report that there was a valuable coal deposit on said lands.

"It was averred by complainant in said bill (defendant, Alger) that he first had his suspicions as to the false representations concerning the quality of and title to said lands aroused in December, 1893, and then caused a survey to be made to ascertain the extent of the shortage; that this survey was not finished until April, 1894, and that then for the first time was revealed the full extent of the fraud perpetrated on him, that after this discovery as to the acreage he caused a full investigation to be made, and, to his great surprise, discovered the other frauds alleged, as hereinbefore stated. By means of these frauds the said Alger claimed that he had been imposed upon and induced to pay $103,628

for lands barely worth one-tenth of the sum, or at most not exceeding $15,000, and in addition had been caused to pay out taxes on the lands amounting to $1,500.   By an amendment filed to said bill it was alleged that the land was then in the same condition as when purchased, and a reconveyance thereof was tendered with the said amendment.   A rescission of the sale' was prayed, together with a decree in favor of the said Alger for the purchase money, with interest, and all expenses, taxes, etc., paid on account of the sale.   It was also charged in said bill that John W. Gonce, one of the defendants was a party to the sale, and had included in it a 5,000-acre tract of land which he had quitclaimed to John F. Anderson for the purpose of being included, and that this tract in fact contained but 4,000 acres.   Gonce was alleged to have participated in the frauds practiced, and to have received part of the purchase money.   Recovery was sought against O. J. Sheridan and W. C. Green, as members of the firm of Sheridan, Green & Company, on account of their perpetration of the fraud alleged in the bill."

It is further alleged in the present bill that two of the defendants to the bill just referred to filed their answer to Governor Alger's bill in the United States circuit court, denying that, at the time of the purchase made by Governor Alger of the said lands, Sheridan, Green & Company were the agents of Anderson, and averring that in fact the said firm were the vendees of Anderson under the option and title bonds already mentioned, and

the vendors of the said Alger in the sale made to him, and responsible alone to him for the frauds committed by them; that John F. Anderson had no other connection with the sale, except to make conveyance, as he was bound to do by his bond for title, and that he received of the purchase money only $4 per acre, the balance being the profits made by Sheridan, Green & Company; that all fraud, as far as he was concerned, was denied in that answer; and that it was also denied that complainant in that bill had but recently made the discoveries referred to in the bill.

It is further alleged in the present bill that O. J. Sheridan answered that bill, denying all frauds charged therein, and denying that he acted as agent for Anderson in the negotiations between his firm and Governor Alger, and averring that under the title bond they sold the lands on their own account.

The bill in the present case then proceeds as follows, viz.:

"On the pleadings and evidence introduced thereunder the cause was heard in the circuit court of the United States aforesaid on February 12, 1897, and the court, being of opinion that Sheridan, Green & Company were agents, and not vendees, of the said John F. Anderson, and because they had paid to A. J. Freer, the agent sent by the said Alger to examine and report on said lands, one-third of the profits made by them from the sale of the said lands to Alger, decreed that the sale be rescinded, set aside, and held for naught, and that

the said Alger should reconvey the premises to Louie H. Keith, as executrix of the said Jno. F. Anderson, deceased, to be sold and disposed of by her as directed by the will of her testator, and that he recover of the said Louie H. Keith, as such executrix, the purchase price paid for such land, then amounting, with interest, to $155,223.89, and $960.25 on account of taxes paid by him on account of the lands. This recovery was declared a lien upon the lands ordered to be reconveyed to the executrix and a special commissioner was appointed to make sale of same unless the recovery should be paid within thirty days from the date thereof. Execution was awarded for any balance that might remain after crediting the decree with the proceeds of the sale. A decree was entered dismissing the bill as to O. J. Sheridan and W. C. Green, defendants named in the bill, and E. J. Linn, not named as a defendant; thus releasing them from all liability on account of the frauds charged. Decree was also rendered against Jno. W. Gonce for $23,740.89.

"On June 10, 1897, Louie H. Keith, in her own right, and as executrix of Jno. F. Anderson, deceased, T. B. Anderson, Luke Anderson, and certain other devisees of Jno. F. Anderson, deceased, and Jno. W. Gonce, having obtained leave therefor, filed their supplemental bill setting forth the proceedings which had led to the decree aforesaid, and averring that since the rendition thereof they had discovered that, soon after the said lands were purchased by the said Russell A. Alger, he

had learned that his agent, A. J. Freer, had been paid a part of the profits made by Sheridan, Green & Company, and had made no objection thereto, and that he had been fully advised after said sale of all of the facts and circumstances connected therewith, and that after being so informed he still retained the said Freer in his service, and had been exercising acts of ownership over said land, and had completed the purchase thereof by paying the notes for the deferred installments of purchase money, thus ratifying and confirming said sale.

"To this supplemental bill the said Alger filed his answer, denying that he had discovered the bribery of his agent, Freer, and the other circumstances attending said sale, soon after the same was consummated, and reciting the manner in which his attorneys at Winchester had put the information in the form of a letter, thus fixing on his mind how and when he received the knowledge of the bribery of Freer. He also denied that he still retained the said Freer in his employment, but admitted that he was employed in a corporation in which said Alger held an interest to a considerable extent.

"On the rehearing of said cause under the supplemental bill and new evidence introduced, and on the whole record, a decree was entered by the United States court aforesaid on April 20, 1899, setting aside the former decree in favor of the said Alger, and dismissing the bill filed by him. From this decree the said Alger petitioned for and obtained an appeal to the United States circuit court of appeals for the sixth circuit, ask-

ing for a reversal of said decree because the circuit court erred in not granting a rescission (1) because of the corruption and bribery of Freer by John F. Anderson and his agents, Sheridan, Green & Company; (2) because Jno. F. Anderson fraudulently included in the sale lands to which he knew he had no title; and (3) because of the fraud of Jno. F. Anderson and his agents, Sheridan, Green & Company, in facing up and painting the coal entries, etc., and because the court erred in holding that the said Alger had been put on inquiry as to any one of the several frauds which had been practiced on him.

"On November 7, 1900, the appeal was heard and determined by the United States circuit court of appeals for the sixth circuit, and affirmed as to appellee Jno. W. Gonce, but reversed as to Louie H. Keith as executrix, and the heirs of Jno. F. Anderson, deceased, and remanded for the purpose of enforcing the original decree rendered by the circuit court, as already hereinbefore stated.

"A mandate having issued, the circuit court of the United States did on the 11th day of January, 1901, enter its final decree in said cause, whereby it was decreed that, because of the bribery of the said Freer by the said Sheridan, Green & Company, the sale aforesaid be rescinded and set aside, and ordering and adjudging that the said Russell A. Alger reconvey the premises to Louie H. Keith, as executrix of John F. Anderson, deceased, to be sold and disposed of by her as directed by

the will of her testator, and adjudging against her a
recovery in favor of the said Alger for the whole of the
purchase money paid on account of said sale, then
amounting, with interest, to the sum of $201,014. 97, and
for the further sum of $1,243.52, taxes paid on said
lands. To secure the payment of these recoveries, a
lien was declared on the lands which the said Alger was
ordered to reconvey to the said Louie H. Keith, and a
sale thereof was directed unless said recoveries were
paid within thirty days from the date thereof.

"Complainants further aver and charge that on or
about the ———— day of February, 1897, the defendant,
Alger, bargained, sold, and executed, a deed conveying
said 14,804 acres of land to Governor A. T. Bliss, of
Michigan, for a large consideration then paid to him,
and amounting, as complainants are informed, to
$85,000 or $90,000. This conveyance was, as they are
advised, a positive ratification of the purchase which
said Alger was then seeking to rescind, and a parting
with the title which he was, by the decree of the court,
as before stated, ordered to reconvey to her. And they
charge that the said Alger, in order to deceive the court
and complainants, and to secure the. rescission of the
sale to him, concealed the conveyance or sale made by
him to the said Bliss, and, in order to effect said con-
cealment, he did, by and through his attorneys, request
and procure the said Bliss not to record the deed con-
veying the said lands to him, and said deed was not in
fact at that time, and has never since been, recorded.

The making of said sale to Govornor Bliss was purposely concealed, and all knowledge thereof suppressed, to enable defendant to impose on complainants and the court as before stated.   But having concealed said conveyance, and having fraudulently procured a rescission of the sale as aforesaid, and a recovery for all the purchase money paid under the deed executed by the said Jno. F. Anderson, deceased, with interest, amounting as aforesaid to $201,014.97, and a recovery also for taxes paid on account of said land, and a sale of said 14,804 acres of land to satisfy said large recovery, and having under said sale bought in said land, the said Alger did then, on May 11, 1901, for a recited consideration of $1, and other valuable considerations then paid, convey the lands to the said Bliss.

"Complainants therefore further charge that the recited consideration was not the real consideration for said conveyance, and was made for the purpose of further deceiving complainants and keeping them in ignorance of the original sale made in February, 1897. Complainants are advised that the decree of rescission and the recovery obtained against the said Louie H. Keith as executrix was, on account of the facts stated, fraudulent, and should for that reason be set aside and held for naught.   At the time this decree was rendered, defendant, Alger, was representing to complainants and the court that he was still the owner of the land conveyed to him by Jno. F. Anderson, deceased, although he had then parted with said title and could not recon-

vey the said lands; and he procured a judgment to be entered in his favor for $201,014.97, though he had received from Governor Bliss $90,000 for these lands.

"Complainants further aver that by the fraudulent acts of defendant, Alger, as aforesaid, in concealing from complainants the fact that pending his suit for rescission he had conveyed the lands in controversy to the said A. T. Bliss, and was therefore unable at the time of the rendition of the decree aforesaid in his favor to reconvey the property, complainants were grossly deceived and imposed upon, and were thus prevented from setting up by way of defense to said suit the fact that said Alger had parted with the title to said lands and was unable to comply with the terms of the decree in his favor, and had by his own act waived the right to ask the relief sought, and placed himself in a situation that would have required a dismissal of his bill if the court had not been deceived.

"Complainants further aver that they had no knowledge of the fraud thus practiced on them by defendant, Alger, prior to the rendition of the decree aforesaid, on the 11th day of January, 1901, nor did they in fact know anything of the sale of said lands to A. T. Bliss until within the last few weeks. Complainants only learned of said sale to Bliss through statements made by said Bliss and his business agent, A. F. Cook, when said Bliss and Cook were in Chattanooga, in June and July last, seeking to sell the property which the said Bliss had purchased of defendant as aforesaid. Complain-

ants aver that said Bliss and Cook both stated at the
time aforesaid, distinctly and in detail, the circum-
stances of the sale of said lands by defendant, Alger, to
said Bliss in February, 1897, and of the urgent request
made by said defendant of said Bliss that the deed for
the property which was executed at that time should
not be registered, and the fact of said sale kept con-
cealed until after defendant had obtained the decree
aforesaid in his favor.   Complainants fully acquit said
Bliss and said Cook of any knowledge of or participa-
tion in the fraud practiced on them by defendant, Alger,
and charge that they were persuaded to withhold the
deed made  February, 1897,  from record, upon the
false representation of defendant that he was engaged
in clearing the title to the land, and that if the deed
was recorded then it would complicate his litigation and
embarrass him in his efforts to clear up the title.   And
complainants allege that they do not believe that either
the said Bliss or the said Cook know even now the real
reason why said defendant was so solicitous to keep
concealed the fact of his sale of said lands to said Bliss
at the time said sale was made.

"Complainants further aver that  defendant, Alger,
in order to more successfully conceal all knowledge of
the aforesaid sale to Governor Bliss, and so prevent
complainants from availing themselves of their legal
right to have the bill of said defendant, Alger, dis-
missed, because of said sale, pending his said suit,
caused the taxes on said mountain land from 1897 to

1902, which were in fact paid by Governor Bliss, to be paid through defendant Alger's agent, one J. C. Mc-Caul. Complainants charge that the money for said taxes was furnished by Governor Bliss to Alger's said agent McCaul, and by him transmitted to Tennessee, so that suspicion might not be aroused that defendant, Alger, had sold said land, and that Governor Bliss had become the owner thereof, as hereinbefore stated. Complainants further aver that one Frank Buchkosky, who was defendant Alger's agent in Tennessee in charge of said lands, at the time of the sale thereof to Governor Bliss in 1897, was after said sale employed in the same capacity by Governor Bliss, but that the fact that he had passed from the employment of said Alger to Governor Bliss was carefully concealed by defendant from the public and from the complainants, and, in order to make such concealment effective, said Buchkosky's salary, as in the case of the taxes aforesaid, was paid from 1897 to 1902 by the said J. C. McCaul, agent of defendant, Alger, although the money for said salary was furnished by Governor Bliss. By this means one more possible ground of suspicion was removed that defendant, Alger, had parted with the title to said land. Complainants aver that defendant, Alger, in thus carefully and systematically concealing from them all knowledge and all means of acquiring knowledge of the aforesaid sale of said lands, willfully and intentionally deceived complainants, and fraudulently deprived them of rights to

which they were entitled under the law, as aforesaid, as the result of said sale."

The bill then alleges the institution of insolvency proceedings in the chancery court of Franklin county against the estate of Jno. F. Anderson by James G. Aydelotte and other creditors, the making of an order of reference as to debts, the assets, and the confirmation of the master's report allowing to R. A. Alger a debt of $158,301.82, the balance left of his judgment of $201,014.97, and interest thereon, and some taxes paid, after crediting thereon $50,000 realized from a sale of the 14,804 acres of land, and that the defendant, Alger, was claiming a *pro rata* on this sum out of the proceeds of the residue of the land of the estate sold in that case for the payment of debts, and that the estate would not have proven insolvent, but for the Alger debt. It was also alleged that when the foregoing decree was entered the complainants did not know of the fraudulent manner in which Alger had procured the decree in the circuit court of the United States, and did not discover such fraud until a short time before the present bill was filed.

It is sought in the present bill to set aside the decree obtained in the chancery cause as a consequence of setting aside the decree in the circuit court of the United States.

A demurrer was filed to this bill, presenting the following points: (1) That the proper remedy of the com-

plainants, under the facts stated, would be by bill of review in the court which rendered the judgment compained of; (2) that the new matter complained of did not go to the merits of the controversy; (3) that the complainants do not come into court with clean hands, inasmuch as it appears to be the purpose of the bill, from its face, to set aside a decree which only takes from them that which they procured from Alger by fraud, and thus enable them to retain the fruits of the fraud.

The chancellor overruled the demurrer, with leave to the defendant to rely upon the same grounds in his answer.

Thereupon the defendant filed a special plea of *res adjudicata,* the substance of which was that, after the proceedings in the present case were begun, the complainants filed their petition in the circuit court of appeals of the United States for the sixth circuit, which had finally determined the litigation between the parties to the present bill concerning the land in question, and had remanded the cause to the circuit court of the United States for the middle division of Tennessee for the entry of the final decree, and which latter court had entered such final decree pursuant to the mandate, in accordance with the practice obtaining in that jurisdiction, for leave to file a bill of review for newly discovered evidence (the same stated in the bill in the present case), and had accompanied said petition with a draft of the proposed bill of review, in which draft the same newly discovered matter set up in the present bill was

set out and relied upon as ground for reopening the aforesaid final decree and for a retrial of the issues; that, in further compliance with the practice prevailing in said federal jurisdiction, both parties were permitted to file affidavits on said application in said cause in support of their respective contentions; and that upon the hearing of said matter the said United States circuit court of appeals denied the application, holding that the said new matter did not go to the merits of the controversy, and also that it was fully explained in the affidavits submitted by the present defendant, setting up and showing facts which made it clear to the court that the alleged conveyance to Bliss was in entire harmony with the claims put forward by the present defendant for rescission, in that the rights acquired by Bliss were to abide the result of the litigation, which results he was to receive either in the land, if that should be finally held to belong to the present defendant, or the decree for money, and lien and purchase of the land thereunder in case a rescission should be granted.

The foregoing proceedings were relied upon in the plea as an adjudication of the rights asserted in the bill.

This plea was set down for argument upon its sufficiency in the chancery court, and upon the argument of said motion the plea was held to be good. Thereupon the complainants declined to take issue upon the plea, and the chancellor entered a decree dismissing the bill.

From this decree the complainants prayed an appeal

to this court. Here the cause, with the exception of
the matters arising upon demurrer, was assigned to the
court of chancery appeals. In that court the decree of
the chancellor was affirmed, and the complainants
thereupon again appealed to this court, and assigned
errors. The court of chancery appeals, while not tech-
nically passing upon the grounds of demurrer, held that
the bill on its face did not present a cause of action, and
also held that the plea of *res adjudicata* was well filed,
and sustained it upon its merits.

The errors assigned by the complainants in this court
raise both questions, and are as follows:

"(1) The court of chancery appeals erred in holding
that the facts alleged did not, in law, constitute ground
for impeaching for fraud the decree of the United States
circuit court of appeals, and the order of the chancery
court of Franklin county in allowing said judgment as
one of the claims against the estate of Jno. F. Anderson,
deceased.

"(2) In holding that the judgment or order of the
circuit court of appeals denying complainants' applica-
tion to file bill for the purpose of reviewing said judg-
ment was an adjudication between the parties of the
same cause of action set up and averred in their bill of
complaint in this cause."

WILLIAMS & LANCASTER and BROWN & SPURLOCK, for
complainants.

ESTILL & LITTLETON and LYNCH & LYNCH, for defend-
ant.

Keith v. Alger.

MR. JUSTICE NEIL, after making the foregoing statement of facts, delivered the opinion of the Court.

1. There is no doubt as we think, that a State court may entertain a bill to restrain the enforcement of a decree or judgment of a federal court on the ground that the latter was procured by fraud. This is an independent right of action, that does not involve a retrial of the issues disposed of in such former cause. It has been held that the federal courts may entertain such a cause of action against a judgment of a State court. The reasons and the authorities on which they are based are fully considered in the case of *Marshall* v. *Holmes*, 141 U. S., 589, 12 Sup. Ct., 62, 35 L. Ed., 870; likewise in the case of *National Surety Company* v. *State Bank*, 56 C. C. A., 657, 120 Fed., 593, 61 L. R. A., 394. The same reasons control an application in a State court to restrain the enforcement of a decree or judgment rendered by a federal court.

2. While the writer of the present opinion was a member of the court of chancery appeals of this State that court had occasion to consider the nature of the action in the case of *Noll* v. *Chattanooga Company*, decided August 28, 1896, in an opinion reported in 38 S. W., 287. In that case the following excerpt from *Pico* v. *Cohn*, 91 Cal., 129, 25 Pac., 970, 27 Pac., 537, 13 L. R. A., 336, 25 Am. St. Rep., 159, was quoted with approval:

"That a former judgment or decree may be set aside and annulled for some frauds there can be no question,

but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. . . . The reason of this rule is that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party has by some extrinsic or collateral fraud prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from court by a false promise of a compromise, or purposely keeping him in ignorance of the suit, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest." Citing the case of *U. S.* v. *Throckmorton,* 98 U. S., 65, 66, 25 L. Ed., 93. The court of chancery appeals in the Noll Case refused to set aside the decree attacked for fraud. On appeal to this court the decree of the court of chancery appeals was affirmed.

The two cases last referred to (*Pico* v. *Cohn* and *U. S.* v. *Throckmorton*) are leading cases upon the subject of which they treat, and they are sustained by the very great weight of authority. It would be an idle under-

taking, if we should endeavor, within the limits of a judicial opinion, to discuss a tithe of the vast number of cases bearing upon the point.  We shall only refer to the following extended notes containing a collection of the authorities bearing upon the various phases of the inquiry.  The most extended discussion of the subject which we have encountered is to be found in the very able note to *Little Rock, etc., Ry. Co.* v. *Wells,* 54 Am. St. Rep., 218 to 261, inclusive.  Other cases and notes in the same series are 25 Am. St. Rep., 159 to 171, containing the above-mentioned case, of *Pico* v. *Cohn,* with a note attached thereto; *Fealey* v. *Fealey* (Cal.), 43 Am. St. Rep., 111 to 118; *Fricse* v. *Hummel* (Or.), 46 Am. St. Rep., 610-613; *Camp* v. *Ward* (Vt.), 60 Am. St. Rep., 929-933.  See, also, *Merriman* v. *Walton* (Cal.), 30 L. R. A., 786, and extended note appended thereto; *Dowell* v. *Goodwin* (R. I.), 51 L. R. A., 873.  See, also, 'on the general subject of the jurisdiction of equity in regard to injunctions against judgments, an extended note to *Jarrett* v. *Goodnow* (W. Va.), 32 L. R. A., 321-329, and note to *Jno. V. Farwell Co.* v. *Hilbert* (Wis.), 30 L. R. A., 235-242.

We have several cases in this State, other than *Noll* v. *Chattanooga Company,* in which the doctrine is recognized that the fraud complained of must be some matter extrinsic to the issues tried, although the principle is not distinctly formulated therein.  *Pyett* v. *Hatfield,* 15 Lea, 473; *Gaugh* v. *Henderson,* 2 Head, 628; *Smith* v. *Harrison,* 2 Heisk., 230; *Mathews* v. *Mas-*

*sey,* 4 Baxt., 450-458; *Talbot* v. *Provine,* 7 Baxt., 502-507 *et seq.; Mabry* v. *Churchwell,* 1 Lea, 416, 432; *Haskins* v. *Rose & Turner,* 2 Lea, 708; *McDowell* v. *Morrell,* 5 Lea, 278; *Boro* v. *Harris,* 13 Lea, 36; *Williams* v. *Pile,* 104 Tenn., 273, 56 S. W., 833.

We have been referred by counsel for complainants to the cases of *Randall* v. *Payne,* 1 Tenn. Ch., 137, 142 et seq., and *Maddox* v. *Apperson,* 14 Lea, 596 as holding a contrary doctrine.

There is nothing in the first of these cases which is necessarily in conflict with the rule formulated in *Noll* v. *Chattanooga Co.,* supra.

In the second case referred to, in the discussion of the learned justice who delivered the opinion of the court, there seems to be a disposition to repudiate the doctrine laid down in *United States* v. *Throckmorton,* supra; but, when the case is closely examined, it will be seen that the objections stated consist not so much in a denial of the rule, as in a criticism of its want of definiteness, and of its uncertainty in practical application. It is true that courts will constantly experience embarrassment in deciding whether this or that fraud is extrinsic or intrinsic. While it is very clear that some are of the former character and others of the latter, there may be various occurrences which it will be found difficult to assign to one or the other classification; but the difficulty suggested, we think, cannot be soundly urged as a sufficient objection to the existence of the rule. It is perfectly clear that no one should be

Keith v. Alger.

allowed to enforce a judgment which was procured by any of the fraudulent practices catalogued in *Pico* v. *Cohn,* supra, and *United States* v. *Throckmorton,* supra, or other similar fraudulent practices; but it is equally clear that there must be at some time an end of litigation, and that the parties to a record, or the privies thereto, should not, in general, be allowed to retry the same issues after final judgment and the exhaustion of correctory and appellate proceedings. Carried to its ultimate, there would be no end to such retrials. The second case could be retried by a third, and the third by a fourth, and so on *ad infinitum,* and nothing would ever be settled.

The case of *Marshall* v. *Holmes,* supra, is also cited as an authority in opposition to the rule above announced. An examination of the statement of facts preceding the opinion in that case will show that the ground of relief asserted against the judgment was, in effect, that the plaintiff in the judgment attacked in that case had entered into a conspiracy with the agent of the petitioner to defraud the petitioner by means of a forged letter; that the petitioner was not present at the original trial, had no knowledge of the forged letter or of its use on the trial, and did not discover any of these matters until too late to make use of them, otherwise than by the petition to set aside the judgment. This is the substance of the statement, as we construe it, and from these facts it appears there was really a fraud extrinsic to the issues in the cause for which relief

might have been had, under the rule as laid down in the *Throckmorton* case. It is true that Mr. Justice Harlan, in laying down the basis of the court's action, while referring to the *Throckmorton* case, does not place the decision, in terms, upon that rule, but upon the broader rule "that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." Still there is no criticism of the rule as announced in the *Throckmorton* case, and, as already stated, the facts on which the decision was rested bring it within the rule of that case. At all events, we are of the opinion that the rule as stated in the *Throckmorton* case is the one supported by the weight of authority and by sound reason, when judgments are attacked for fraud only.

3. While we are of opinion that the facts stated in the bill concerning the fraud charged fall within the designation of matters extrinsic to the issues in the original cause, in that it appears from the allegations of the bill that Governor Alger did not content himself with the mere failure to divulge the fact that he had conveyed the land to Governor Bliss, but took active steps to conceal such conveyance, in receiving the money for the taxes from Governor Bliss and paying them through his own agent, J. C. McCaul, thus holding out

to the world that he was still the owner of the property, instead of his vendee, and also in holding out Frank Buchkosky as his agent for the lands, when he was in fact the agent of Governor Bliss, thereby creating the impression that he still owned the lands, still complainants are not entitled to relief, under the facts stated in the bill, because they do not show any meritorious defense to the original cause of action. They do not really deny that the frauds were practiced as charged in the bill filed by Governor Alger in the United States circuit court. Likewise, they do not show that they were injured by the fraud now complained of, committed on the part of Governor Alger, since it appears from the bill that, notwithstanding the alleged conveyance to Governor Bliss, a rescission was really effected, and the land was sold in the proceedings referred to as the land of the Anderson estate, and they thereby got the full benefit of its value. It is true, under the allegations of the bill, they lost the technical advantage arising from the fact that the conveyance had been made by Alger to Bliss. It is possible that if the existence of such conveyance had been discovered in time, and proper pleadings had been filed, bringing the matter to the attention of the court, and no further facts had appeared, other than those appearing in the bill, it would have been decided by the United States circuit court, and on appeal by the circuit court of appeals, that Alger had lost the right to a rescission by such act of ratification; still it does not follow from this that the concealment

of the evidence referred to was such a fraud as would justify this court in setting aside the former judgment or decree as one obtained by fraud. At last, in the light of events which have since followed, and which are shadowed forth in the bill, it is perceived that the conveyance was not intended really as a ratification of the fraud which had been practiced by Anderson upon Alger, but was merely a means of conveying to Bliss Alger's interest in the litigation. Moreover, as the estate of Anderson has received the full benefit of the land, under the allegations of the bill, by reason of the sale made of it under the decree attacked, it is perceived that the estate of Anderson was not, in a legal sense, injured by the fraud; that the claim now put forth is purely technical and is without any legal merit. In order to entitle a complainant to relief under the class of bills to which the present one belongs, it must appear that such complaining party has a meritorious case, and that he was injured by the fraud. *Mathews* v. *Massey*, 4 Baxt., 450-458; *Little Rock & Ft. S. Ry. Co.* v. *Wells* (Ark.), 33 S. W., 208, 30 L. R. A., 560, 54 Am. St. Rep., 222; *White* v. *Crow*, 110 U. S., 183, 4 Sup. Ct., 71, 28 L. Ed., 113.

4. Relief must also be denied to the complainants on the ground that their first duty was to apply to the court in which the case was tried by a proceeding for the correction of errors; that they have made such application by a petition for leave to file a bill of review for newly-discovered evidence; and that relief has, according to

the forms obtaining in that jurisdiction, been denied to them. See the full citation of authorities in note to *Jarrett* v. *Goodnow*, 32 L. R. A., 326-329; also *Merriman* v. *Walton*, supra, 30 L. R. A., 793, and authorities cited.

It is no objection to the conclusiveness of the proceedings in the United States circuit court of appeals instituted to obtain relief that those proceedings were not conducted according to the forms of practice obtaining in our own courts in similar matters. *Hilton* v. *Guyott* (C. C.), 42 Fed., 252. And see *Telford* v. *Brinkerhoff*, 163 Ill., 443, 45 N. E., 156.

It is insisted for complainants that they should not be bound by the adjudication, because the truth of the matters contained in the petition filed in the circuit court of appeals was settled against them on *ex parte* affidavits, and they had no opportunity of examining and cross-examining witnesses upon the matters involved. But the circuit court of appeals placed its action upon two grounds, one of which was that the facts now before us, as set forth in the present bill, did not justify the granting of the relief sought.

It is perhaps true that the action of a court upon a bill of review could not in all cases be treated as *res adjudicata* of matter proper for a bill attacking the same decree for fraud in its procurement, and that there may be some cases wherein a bill of the latter description will be entertained, even after the refusal of a bill of review, or other effort to obtain a retrial in the original action, because of inadequacy of such relief; but we

Keith v. Alger.

do not think that the present case falls among such exceptional instances, since the circuit court of appeals had power to grant complete relief, had the facts stated authorized such relief, and since, further, the basis of the court's action on the present application must be the same as that which controlled the circuit court of appeals in its action upon the face of the petition in that cause, viz., the absence of any real or legal injury inflicted upon them by the fraud charged, and the want of any real equity in complainants' claim.

It results that both assignments must be overruled and the judgment of the chancery court dismissing the bill affirmed.