FIDELITY & DEPOSIT COMPANY *v.* CRENSHAW, CLERK.

*(Jackson.* April Term, 1908.)

1. **JUDGMENTS.** Taken in violation of agreement will be set aside by chancery as for fraud.

Where the clerk of the county, after instituting suit against a decedent's estate to collect an inheritance tax, to which suit a demurrer was filed, agreed with the counsel for the estate and the surety of the administrator that no further proceedings would be taken without notice to the parties, and, in disregard of this agreement, the case was afterwards called, the demurrer overruled, and judgment taken without such notice, chancery will set aside such judgment as for fraud. (*Post, pp.* 609-611.)

Cases cited and approved: Rice v. Bank, 7 Humph., 42; Burem v. Foster, 6 Heisk., 333; Taylor v. Railroad, 86 Tenn., 233; Williams v. Pile, 104 Tenn., 273, 275; Keith v. Alger, 114 Tenn., 1, 22, 26; Bigham v. Kistler, 114 Ga., 453; Merriman v. Walton, 105 Cal., 403; Brooks v. Twitchell, 182 Mass., 443.

2. **DESCENT AND DISTRIBUTION.** Distribution of personalty according to laws of domicile of deceased.

It is well settled in this State that if one dies domiciled in a foreign State, leaving personal property in this State, the laws of the domicile of the deceased will determine who are entitled to the surplus after the payment of debts. (*Post, p.* 614.)

Cases cited and approved: Jones v. Marable, 6 Humph., 116; Carr v. Lowe, 7 Heis., 84, 88; Ellis v. Insurance Co., 100 Tenn., 177.

3. **SAME.** Payment of funds to foreign distributees or removal thereof to foreign State, when.

The personal assets situated or left here by a decedent dying domiciled in a foreign State, after the payment of debts, may be paid, by the personal representative appointed here, to the

Fidelity & Deposit Co. v. Crenshaw.

distributees who are designated as such by the laws of the foreign State, entitling the personal representative to an acquittance for settlement here, or the funds may be removed to the foreign State, upon a bill filed in chancery, and upon a proper showing made. (*Post, p.* 614.)

Cases cited and approved: Keaton v. Campbell, 2 Humph., 224; Carr v. Lowe, 7 Heisk., 84, 88; Yandell v. Elam, 1 Tenn. Chy., 108.

4. **SAME. Legislature may impress any character upon property here.**

The legislature can change the rules stated in headnotes 2 and 3, if it sees proper, and may impress upon the property any character it may choose, but it has not changed them. (*Post, p.* 614.)

Cases cited and approved: McCollum v. Smith, Meigs, 342; Kneeland v. Ensley, Meigs, 628; Jones v. Marable, 6 Humph., 118; Layne v. Pardee, 2 Swan, 232, 234.

5. **TAXATION. No inheritance tax on personalty passing to distributee of a foreign domiciled decedent not subject to inheritance tax under our law, when.**

Where, under the laws of the foreign domicile of a decedent, his personalty situated here passed to his mother, the inheritance tax does not attach to the same, under our inheritance tax law, which does not tax such property passing to a mother, though it would have been taxable under such inheritance tax law, if the property had passed to distributees according to our laws of distribution. (*Post, pp.* 611-617.)

Acts cited and construed: Acts 1893, ch. 174, secs. 1 and 5.

Cases cited and approved: Trust Co. v. Speed, 114 Tenn., 677.

Cases cited and distinguished: In re Romaine, 127 N. Y., 80; In re Houdayer, 150 N. Y., 37; Maryland v. Dalrymple, 70 Md., 294.

6. **SAME.** Primary jurisdiction, of suit for collection of the inheritance tax is in county court; chancery jurisdiction, if no demurrer.

While the primary jurisdiction of a case involving the collection of an inheritance tax is in the county court, yet the chancery court may entertain the controversy, if there is no demurrer. (*Post, p.* 617.)

Case cited and approved: Shelton v. Campbell, 109 Tenn., 690.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

FRANCIS FENTRESS and CARROLL & McKELLAR, for complainant.

GILMER P. SMITH, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The controversy in this case arises over the collection of an inheritance tax out of the estate of Fred A. Hessig.

The deceased, at the time of his death, was a resident and citizen of Kentucky, but had on deposit in the Mercantile Bank in the city of Memphis $17,000. His brother, Herman T. Hessig, qualified as his administrator both in Kentucky and Tennessee. Under the laws of Kentucky the mother of decedent was his sole distributee. If the estate should be held to pass under the laws of Tennessee, his brother, Herman T. Hessig,

Fidelity & Deposit Co. v. Crenshaw.

would take one-half of the estate. On the theory that the said Herman T. Hessig was a distributee of his brother's estate, or that for the purpose of the inheritance tax the estate should be treated as so devolving, the clerk of the county court of Shelby county instituted a proceeding in that court to collect the tax on one-half of the estate. When the bill was filed in the county court a demurrer was filed by the administrator, and by the Fidelity & Deposit Company, the surety of the administrator on his official bond. An agreement was made by Mr. Speed, who was then clerk of the county court, with the attorney representing the estate and the surety above mentioned, that no further proceedings would be taken without notice to the parties referred to. However, in disregard of this agreement, the case was called in the county court, the demurrer overruled, and judgment taken. The existence of this judgment was not discovered until too late to appeal. . Thereupon the original bill in this case was filed to enjoin the judgment, because taken under the circumstances just stated. Mr. Crenshaw, who was successor of the former clerk, Mr. Speed, filed an answer, relying upon the proceedings in the county court as *res adjudicata,* and likewise filed his answer as a cross bill, seeking a recovery of the amount alleged to be due on the inheritance tax.

We think that the conclusion proper on the facts stated is free from doubt.

120 Tenn—

1. A judgment taken as the one in the county court was taken cannot stand. *Williams* v. *Pile,* 104 Tenn., 273, 275, 56 S. W., 833; *Keith* v. *Alger,* 114 Tenn., 1, 22, 26, 85 S. W., 71; 6 Pom., Eq. Jur., 650; 3 Pom., Eq. Jur., 400; *Bigham* v. *Kistler,* 114 Ga., 453, 40 S. E., 303; *Merriman* v. *Walton,* 105 Cal., 403, 38 Pac., 1108, 30 L. R. A., 786, 45 Am. St. Rep., 50; *Brooks* v. *Twitchell,* 182 Mass., 443, 65 N. E., 843, 94 Am. St. Rep., 662. And see *Taylor* v. *Railroad,* 86 Tenn., 233; *Burem* v. *Foster,* 6 Heisk., 333; *Rice* v. *Bank,* 7 Humph., 42.

In *Williams* v. *Pile* it appeared that both parties were present in court, and the cause was continued without terms, and one of the parties left with his witnesses. After that party had left, the case was again called up, and an order was entered on the minutes continuing the cause as upon the application of the party who had left and upon payment of all costs, giving judgment against him for the costs and awarding execution therefor. A bill was brought to set aside this judgment for fraud. In disposing of this matter the court said:

"It is true the chancery court would have no jurisdiction to revise the action of the circuit judge in granting a continuance or awarding costs thereupon. That, however, is not this case. On the contrary, the present is one where an order of continuance is made, accepted by the party now complaining in good faith as the disposition of the cause for that term, and then the entry

of another order, different in material respects and oppressive to the last degree without notice to him or his counsel, until called to his attention after the final adjournment of the court by an officer with an execution issued thereon.

"Whether this last entry was the result of fraud, accident, or mistake, we do not doubt the jurisdiction of a court of equity to intervene by a decree perpetually enjoining this execution."

In 6 Pomeroy, Eq. Jur., section 650, it is said: "Relief is very freely granted where a judgment is taken in violation of a stipulation or agreement as to the conduct of the suit. It is apparent that there is no fraud in the technical sense. Such conduct does not fall within the definition of 'actual fraud'—misrepresentation of existing facts. There is merely a breach of contract; but the effect of such a breach is so manifestly against conscience that the courts will relieve, and base their jurisdiction on the ground of fraud. These stipulations may take various forms. Where an attorney represents that a case will not be called at a certain term of court, equity will enjoin or set aside a judgment entered at that term in the absence of the complainant. Likewise, where there is an agreement that a case is not to be tried without notice, relief will be granted against a judgment entered without notice."

2. The section of our inheritance tax law on which the question arises is section 1, c. 174, p. 347, of the Acts of 1893, which reads as follows:

"That all estates—real, personal, and mixed—of every kind whatsoever, situated within this State, whether the person or persons dying seized thereof be domiciled within or out of this State, passing from any person who may die seized or possessed of such estates, either by will or under the intestate laws of this State, or any part of such estate, or estates, or interest therein, transferred by deed, grant, bargain, gift, or sale, made in contemplation of death, or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons or to bodies corporate or politic, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children, and lineal descendants, born in lawful wedlock, of the person dying seized and possessed thereof, shall be, and they are hereby, made subject to a duty or tax of five dollars on every hundred dollars of the clear value of such estate or estates so passing, and at and after the same rate for any less amount, to be paid to the use of the State; and all owners of such estates and all executors and administrators and their sureties shall only be discharged from liability for the amount of such taxes or duties the settlement of which they may be charged with, by having paid the same over for the use of the State as hereinafter directed; Provided, that no estate which may be valued at a less sum than two hundred and fifty dollars shall be subject to this duty or tax; and provided further, that the term 'children' shall not be construed to apply to adopted children."

Section 5 will aid in the construction of the section just quoted. It is as follows:

"That the executor or administrator or other trustee paying any legacy or share in the distribution of any estate subject to the collateral inheritance tax, as provided by this act, shall deduct therefrom at the rate of five dollars in every hundred dollars upon the whole legacy or sum paid; or, if not money, he shall demand payment of a sum to be computed at the same rate upon the appraised value thereof, for the use of the State; and no executor or administrator shall be compelled to pay or deliver any specific legacy or article to be distributed, subject to tax, except on the payment into his hands of a sum computed on its value, as aforesaid; and in case of neglect or refusal on the part of said legatee or distributee to pay the same, such specific legacy or article, or so much thereof as shall be necessary, shall be sold by such executor or administrator at public sale for cash, after notice to such legatee or distributee, and after ten days' advertisement, as in case of ordinary administrator's sales; and the balance that may be left in the hands of the executor or administrator, after reserving the tax, shall be distributed to the legatee or distributee as is or may be directed by law; and every sum of money retained by any executor or administrator, or paid into his hands on account of any legacy or distributive share, for the use of the State, shall be paid by him without delay to the county court clerk of the county in which his accounts are being administered."

It is well settled in this State that if one dies domiciled in a foreign State, leaving personal property in this State, the laws of the domicile of the deceased will determine who are entitled to the surplus after the payment of debts. *Carr* v. *Lowe,* 7 Heisk., 84, 88; *Ellis* v. *Insurance Co.,* 100 Tenn., 177, 43 S. W., 766; *Jones* v. *Marable,* 6 Humph., 116. The administrator appointed in this State may pay to the distributees who are designated as such by the foreign laws and obtain an acquittance for settlement here (*Carr* v. *Lowe,* supra), or upon a bill filed in chancery, and a proper showing made, the fund, after payment of debts in this State, may be removed to the foreign State (*Keaton's Distributees* v. *Campbell,* 2 Humph., 224; *Carr* v. *Lowe,* supra; *Yandell* v. *Elam,* 1 Tenn. Ch., 108). Of course, the legislature can change the rules above stated, if it sees proper, and may impress upon the property any character it may choose. *McCollum* v. *Smith,* Meigs, 342, 33 Am. Dec., 147; *Kneeland* v. *Ensley,* Meigs, 628, 33 Am. Dec., 168; *Jones* v. *Marable,* 6 Humph., 118; *Layne* v. *Pardee,* 2 Swan, 232, 234. The above rule of private international law, however, has not been changed in this State.

Now, we may easily ascertain the meaning of section 1 of the act of 1893 by quoting those parts which apply especially to the kind of case we have before us, viz.:

"That all estates — real, personal, and mixed — of every kind whatsoever, situated within this State, whether the person or persons dying seised thereof be

domiciled within or out of this State, passing from any person who may die seised or possessed of such estates, . . . to any person or persons or to bodies corporate or politic, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children, and lineal descendants born in lawful wedlock of the person dying seised and possessed thereof shall be, and they are hereby, made subject to a duty or tax of five dollars on every hundred dollars of the clear value," etc.

Under the law of Kentucky, which governs the succession in this case, we have seen that the property goes to the mother of decedent, and not to any collateral kindred: hence the statute does not apply to the case we have before us.

When we turn to section 5, also quoted, it is seen that it is the duty of the administrator, before paying any distributive share subject to collateral inheritance tax, to deduct the tax therefrom and pay it over to the county court clerk. This means, of course, that the receipt of the clerk will be a good voucher to him on settlement with the distributees. Certainly this result could not follow if the tax should be deducted from the distributive share of one who was not subject to the inheritance tax law. To apply the principle to the exact case we have in hand, it is clear that, if the administrator should pay to the county court clerk of Shelby county an inheritance tax, it would be no good acquittance to him on settlement with the mother of

decedent. On the general question, see *Trust Co.* v. *Speed,* 114 Tenn., 677, 88 S. W., 321.

In support of the opposite view, we are referred to *In re Romaine,* 127 N. Y., 80, 27 N. E., 759, 12 L. R. A., 401, *In re Houdayer,* 150 N. Y., 37, 44 N. E., 718, 34 L. R. A., 235, 55 Am. St. Rep., 642, and *State of Maryland* v. *A. J. Dalrymple,* 70 Md., 294, 17 Atl., 82, 3 L. R. A., 372.

The cases referred to have no bearing upon the present controversy. In the Maryland case it is expressly stated that the persons who took the property situated in Maryland, under the law of the foreign State, did not belong to the excepted classes. The same is seen to be true in the *Romaine Case,* as is apparent from the last sentence in the opinion of the court. *Houdayer's Case* is based upon the *Romaine Case.* It does not distinctly appear from the opinion in this case whether the property belonged, under the foreign law, to one of the excepted classes or not; but it is clear in all three of the cases referred to that the question which the court had under examination was whether, under the statutes of the respective States, the property of persons in New York, belonging to foreign persons and devolving upon those persons by the law of foreign States, could be taxed under the inheritance laws of the States where the property was located. Not one of them is authority for the proposition that such property of one in a foreign State belonging to the excepted classes could be taxed. In the case now be-

fore the court it is insisted by the cross-complainant that although the property goes under the foreign law to the mother, who belongs to one of the excepted classes, it is taxable in Tennessee, because it should be treated as if passing under the Tennessee law, and, if so passing, it would go to one of the collateral kindred, and not to one of the excepted classes; that is, to one in the direct line. The proposition need to be stated only to show its unsoundness.

3. It is insisted that the chancery court has no jurisdiction of a case involving the inheritance tax. This is a mistaken view. *Shelton* v. *Campbell*, 109 Tenn., 690, 72 S. W., 112. It is held in that case that, while the primary jurisdiction was in the county court, yet the court of chancery may entertain the controversy if there is no demurrer. There was no demurrer in the present case. In reply to this fact it is insisted by cross-complainant that, although there was no demurrer, still the answer relied upon the former proceedings of the county court. This is true, but the defense set up was in the nature of a plea of *res adjudicata*. This is, of course, a pleading vastly different from a demurrer.

There is no error in the decree of the chancellor, and it must be affirmed, with costs.

Under the statute the costs will be taxed to the State, and certified to the comptroller for payment.