[No. 13892.   In Bank. — September 10, 1891.]

## PIO PICO, APPELLANT, v. JULIUS B. COHN ET AL., RESPONDENTS.

JUDGMENT — ACTION TO ANNUL — FRAUD EXTRINSIC TO MERITS — PERJURED TESTIMONY. — To authorize a court of equity to set aside and annul a former judgment on the ground of fraud in its procurement, the fraud must be extrinsic or collateral to the questions examined and determined in the action, and must have prevented a fair submission of the controversy, and the judgment will not be vacated merely because it was obtained by forged documents or perjured testimony, or by bribing a witness to swear falsely.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Anderson, Fitzgerald & Anderson, Del Valle & Munday, Smith, Winder & Smith,* and *Oliver P. Evans,* for Appellant.

*A. Brunson,* and *Stephen M. White,* for Respondents.

The COURT. — After a full consideration of the argument presented upon the rehearing in this cause, we are satisfied with the former decision, rendered on February 11, 1891; and for the reasons there given, the judgment appealed from is affirmed.

The following is the decision above referred to, rendered in Bank on the 11th of February, 1891: —

BEATTY, C. J. — This is a suit in equity to vacate and annul a final decree in another action between the same parties on the ground that it was procured by fraud. The superior court sustained a demurrer to the complaint, and thereupon gave judgment for the defendants, from which the plaintiff appeals. The principal question presented by the appeal, and the only question we find it necessary to consider, is, whether the complaint, taken as true, presents a case entitling the plaintiff to the relief demanded, or to any relief.

It is alleged that in April, 1883, the plaintiff was owner of several parcels of real estate in Los Angeles, then worth over two hundred thousand dollars, and of still greater value now; that one parcel of the land had been sold under decree of foreclosure, and the time for redemption was about to expire; that there were other pressing liens resting upon the whole property, amounting, with the sum necessary to redeem the parcel sold, to about sixty-two thousand dollars as then estimated; that plaintiff was anxiously endeavoring to raise money to effect such redemption and save his property from sacrifice; that one B. Cohn, since deceased, whose administrator is the principal defendant herein, offered to loan, and did loan, him the necessary sum, taking for security a grant absolute in terms of the encumbered property.

The consideration expressed in the deed was the exact sum at which the liens and encumbrances on the land were estimated,—sixty-two thousand dollars. The value of the land was, as above stated, over two hundred thousand dollars. Within a month or two after the execution of his deed, plaintiff tendered Cohn sixty-five thousand dollars, and demanded a reconveyance, which was refused, whereupon he commenced an action to compel a reconveyance, alleging in his complaint that his grant to Cohn was in fact a mortgage to secure a loan. Cohn answered, alleging that the transaction was an absolute sale.

Upon a trial of this issue the superior court found for the plaintiff, and decreed a reconveyance upon payment of one hundred and three thousand dollars, this being the amount of the sum originally advanced by Cohn, and certain additional sums which he was found to have expended subsequently in the compromise and settlement of other claims against the property. But on motion of the defendants in that action, the superior court ordered a new trial, unless the plaintiff would consent to a modification of the findings and decree, adding thirty-five thousand dollars to the amount to be paid de-

fendants upon reconveyance of the land; and the plaintiff failing to consent to such modification, the order for a new trial was made absolute, and, upon appeal of the plaintiff, was affirmed by this court. (67 Cal. 258.) Thereupon a new trial was had in the superior court, but before a different judge, who found upon the principal issue, in favor of the defendants, and decreed against the right of redemption. From that decree, and an order denying his motion for a new trial, the plaintiff again appealed to this court, where the decree and order were affirmed (78 Cal. 384) upon the ground that the evidence being conflicting, the findings of the lower court could not be disturbed. It is to annul the decree so affirmed that the present action is brought, and the fraud by which it was procured is shown by allegations in substance as follows: At the date of the original transaction with Cohn, Pico was an old man over eighty years of age, unable to speak or understand the English language, unused to complicated statements or accounts, easily deceived, and in great distress and trouble regarding his business affairs. He confided in Cohn, relied upon him implicitly, and at his solicitation abstained from consulting his usual legal advisers. In the conduct of the negotiations with Cohn, the only other person present was one Pancho Johnson, who knew everything that took place, and well knew that the transaction was a loan and security, and not a purchase and conveyance absolute; and shortly after the execution of the deed, so stated in the presence of Pico's attorneys and numerous other persons. Relying on Johnson's knowledge of the transaction, and his statements concerning it, Pico called him as a witness on the first trial of the action to redeem, when, instead of testifying that the transaction was a loan and mortgage, he testified that it was a sale and absolute conveyance; but in spite of his adverse testimony, the court, as above shown, found for the plaintiff. Before the cause came on for trial a second time, Johnson was dead; but his testimony, as given on the first trial, had been reduced to writing, and was on file among the papers in the case.

Plaintiff and his counsel knew that this testimony was false in its general statement to the effect that the conveyance to Cohn was absolute, and they suspected that Cohn had bribed the witness to so testify; but they had no evidence of such bribery, although they had used the utmost diligence to discover it. Upon mature consideration, they decided at the second trial to put in evidence the written transcript of Johnson's testimony at the first trial. Among their reasons for doing so were the following: Other testimony in the case showed that Johnson was present during the negotiations between Pico and Cohn, not only as interpreter, but as the particular friend and adviser of the former, and counsel for plaintiff feared that by omitting to offer Johnson's testimony they would incur the odium of suppressing evidence known to exist, whereas by putting it before the court they would have the advantage of some facts that they could prove by no other witness. They would have his admission of other facts inconsistent with the theory of a sale. The court would see that he was hostile to Pico, and he could be contradicted by proof of his statements made in the presence of others.

Without going more fully into the reasons which induced counsel for plaintiff to submit the testimony of Johnson to the consideration of the court on the second trial of the former action, we content ourselves with saying that the allegations of the complaint show that the course pursued by them was, under the circumstances, wise and proper, if not absolutely necessary. But contrary to their expectations, the court believed his false testimony, and for that reason alone decided against the plaintiff. In support of this conclusion, the complaint sets out the substance of all the testimony of Cohn and Pico, and in detail the material portions of Johnson's testimony, from which, with other averments, it appears that but for Johnson's positive perjury and suppression of the truth, the judgment here in question would not have been given. This being shown, it is next alleged that after the final affirmance of that judgment by this

court, plaintiff made the discovery that Cohn had paid Johnson two thousand dollars to testify falsely. The particulars of this bribery and its discovery are detailed in the complaint, and show that on the very morning that Johnson gave his testimony, Cohn placed two thousand dollars in the hands of one Forbes, with directions, given in Johnson's presence, to pay it to him if he testified to an absolute sale, and that, immediately after he had so testified, he demanded and received the money.

It is averred, and we think sufficiently shown, that upon proof of these facts there is a reasonable certainty that plaintiff would, upon another trial, gain his cause. Such being the case, is plaintiff entitled to a decree vacating and annulling the former decree on the ground that it was procured by fraud? After a careful and extended examination of the authorities, we are constrained to answer this question in the negative. That a former judgment or decree may be set aside and annulled for some frauds there can be no question; but it must be a fraud extrinsic or collateral to the questions examined and determined in the action. And we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to

represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*United States* v. *Throckmorton,* 98 U. S. 65, 66, and authorities cited.)

In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum.* But counsel for appellant seek to distinguish this case from those in which it has been held that a judgment will not be set aside by reason of its being based upon forged documents or perjured testimony. They say that the fraud committed by Cohn was the bribing of Johnson; that this was collateral and extrinsic; that it was not and could not have been the subject of investigation at the trial of the original action. We do not think this distinction can be maintained. The fraud which Cohn committed was the production of perjured evidence in support of his de-

fense.   The means by which he induced the witness to swear falsely was but an incident.

It may be safely asserted that a witness does not often deliberately perjure himself without being induced thereto by some fraudulent or corrupt practice on the part of him who gets the advantage of the perjury.   It is a matter of indifference what particular form such corrupt practice takes.   The evil and the wrong is in the perjury which follows.   In this case the truth of Johnson's evidence was necessarily drawn in question at the trial, and determined by the decision of the court; and all that has since been discovered is another item of testimony bearing on that point.   We cannot find any substantial ground upon which this case can be distinguished from *United States* v. *Throckmorton*, 98 U. S. 65, 66.   The decision in that case has been approved by this court as recently as in *In re Griffith*, 84 Cal. 113.   The following decisions of this court are also in point: *Allen* v. *Currey*, 41 Cal. 321; *Amador Canal etc. Co.* v. *Mitchell*, 59 Cal. 176.   Many other authorities to the same effect are cited in the brief for respondents.   On the other hand, the case of *Laithe* v. *McDonald*, 7 Kan. 254, 12 Kan. 340, directly supports the position of appellant, as does the case of *Fabrilius* v. *Cock*, 3 Burr. 1771.   The cases of *Verplanck* v. *Van Buren*, 76 N. Y. 247, and *Dringer* v. *Railway Co.*, 42 N. J. Eq. 573, contain expressions which seem to imply the same doctrine, but they do not directly support it.   Other cases cited by appellant are less in point.

We think, on the whole, that it is settled by the great weight of authority that the plaintiff's action cannot be maintained, and that the judgment of the superior court must be affirmed.   So ordered.

McFARLAND, J., SHARPSTEIN, J., and PATERSON, J., concurred.