## WHEELER v. BIGHEART.

No. 23113.   Oct. 23, 1934.

Rehearing Denied Dec. 27, 1934.

As Corrected May 14, 1935.

Holcombe & Lohman, for plaintiff in error.

Leahy, Macdonald & Files, Louis O. Fink, and McCoy, Craig & Pearson, for defendant in error.

BUSBY, J. Rita Smith, Osage allottee, No. 284, died on the 10th day of March, 1923. There was litigation over her estate during the following six years. In re Smith Estate, Beaty et al. v. Rogers, 125 Okla. 104, 256 P. 725. Plaintiffs in error in that case were Pitts Beaty, administrator, with will annexed, of the estate of Rita Smith, deceased; Mollie Burkhart, an incompetent, Pitts Beaty, guardian of Mollie Burkhart, Grace Bigheart, by her guardian, John L. Bird; John Bigheart, Anna Leulla Bigheart, by her guardian, M. L. Holcombe, and M. L. Holcombe, executor of the estate of Joseph Bigheart, deceased; and the defendants in error were Ella Rogers and S. S. Mathis, administrator of the estate of W. E. Smith, deceased. The firms of Holcombe & Lohman and Leahy, Macdonald & Files represented plaintiffs in error. M. L. Holcombe, who was one of these attorneys, was also executor of the estate of Joseph Bigheart, deceased. After that litigation terminated, a decree of heirship was rendered in the county court of Osage county, Okla. The controversy in this court now is between Bertha Bigheart Wheeler and John Bigheart, full-blood Osage allottee, No. 785, over an undivided one-twelfth interest in the estate of Rita Smith, which through mistake, inadvertence, or fraud was, on October 19, 1929, by the county court of Osage county, Okla., awarded to Bertha Bigheart Wheeler, whereas, as a matter of law, it should have been awarded to John Bigheart. Jr. The same M. L. Holcombe who was attorney in the first litigation reaching this court, and also executor of the estate of Joseph Bigheart, deceased, now appears of record herein for Bertha Bigheart Wheeler. On November 17, 1930, John Bigheart, Jr., commenced this action to vacate the judgment or decree, supra, rendered October 19, 1929. His petition was filed by attorneys L. O. Fink and Leahy, Macdonald & Files. Attorneys Macdonald and M. L. Holcombe

were two of the principal witnesses in the last-named proceeding to determine whether or not the erroneous decree entered October 19, 1929, should be set aside. Reference to their evidence will be made hereafter.

The undivided one-twelfth interest in the estate of Rita Smith which was decreed to Bertha Bigheart Wheeler has not been distributed, nor has the administration of the estate of Rita Smith been discharged. In fact, the administration proceeding is still pending in the county court of Osage county. There are no rights of innocent or third parties intervening. All parties now concede that Joseph Bigheart died prior to Rita Smith. A stipulation appears in the case-made as follows (C.-M. 166):

"It is further stipulated and agreed that at page 59 of said transcript in the Joseph Bigheart estate, the petition for the probate of the will was filed by M. L. Holcombe, being the same M. L. Holcombe, as is attorney for Bertha Bigheart Wheeler in this case, and in the county court, stating that Joseph Bigheart died on January 26, 1923, and signed by him as petitioner, and that the decree of partial distribution on page 62 of said transcript in the estate of Joseph Bigheart, deceased, shows that M. L. Holcombe was acting as her attorney.

"Mr. Holcombe: I will admit all those things, Mr. McCoy, but object on the ground that they are incompetent, irrelevant, and immaterial and not in issue."

As a matter of law, since Joseph Bigheart died prior to Rita Smith, Bertha Bigheart Wheeler was not entitled to inherit one-twelfth estate of Rita Smith. Obviously, if the true facts had been called to the attention of the county judge, the one-twelfth in question awarded to Bertha Bigheart Wheeler originally would have been awarded to John Bigheart, Jr. In the first decree of the county court (C.-M. 15), the county judge made the following finding: "The court further finds that said Joseph Bigheart has died **since** the death of said Rita Smith." (Emphasis ours.) If the word "since" in the foregoing finding had been "prior", to conform to the facts, the court would have adjudged John Bigheart, Jr., as the heir to the one-twelfth in question. In setting aside the erroneous decree, the county court made the following finding:

"The court further finds that Joseph Bigheart died January 26, 1923, prior to the date of the death of Rita Smith, that there is testimony in the record to the effect that Bertha Bigheart Wheeler, in the hearing in this court on the question of the heirship

of Rita Smith, deceased, testified that Joseph Bigheart died subsequent to Rita Smith."

"The court further finds that there is conflicting testimony in the record to the effect that Bertha Bigheart Wheeler did not testify at said hearing that Joseph Bigheart died subsequent to the death of Rita Smith.

"The court further finds, however, that when the judgment and final decree of heirship in said estate was prepared, and signed by this court, it contained the finding that Joseph Bigheart died subsequent to the death of Rita Smith.

"The court further finds that it is the contention of Bertha Bigheart Wheeler that such a finding in said decree was based upon a stipulation made by and between the parties in interest in the hearing, wherein the heirs of said Rita Smith were determined, and not upon the testimony of any witness. But the court further finds that whether the finding in said decree that Joseph Bigheart died subsequent to the death of Rita Smith was based upon a stipulation, or whether it was based upon the testimony of Bertha Bigheart Wheeler, the fact still remains that the mistake was made as to the time when the said Joseph Bigheart did in fact die.

"The court further finds that one-twelfth of the estate of Rita Smith, deceased, which was awarded to Bertha Bigheart Wheeler under the decree, has not been distributed, and is still intact in the office of the superintendent of the Osage Indian Agency, and that the aforesaid final decree of this court in the Rita Smith case has not been accepted or approved by the Department of the Interior as to said one-twelfth interest, which is in controversy between the said Bertha Bigheart Wheeler and the said John Bigheart, Jr.

"The court further finds that due to the aforesaid error or mistake in the aforesaid decree, if the same is permitted to stand, a grave injustice will be done in this case and that the same should be corrected by this court."

On appeal the trial judge in the district court in this connection had this to say:

"* * * And as I say, I do not think that Mr. Holcombe, in this case, made any intentional misstatement. Mr. Holcombe was in a position to know, of course, and did know that Joe Bigheart died on January 26, 1923, having been the special administrator of the estate, and afterwards having been appointed administrator of the estate, and was also in a position to know that Rita Smith died after Joe Bigheart. I think he made the statement to Mr. Macdonald because he was just mistaken as to what the law was on the subject. But it has the same effect as a deliberate attempt to perpetrate a fraud would have. John Bigheart is deprived of his right to inherit certain portions of the estate by reason of the representations made, and it finally goes on undiscovered as suggested by counsel here for the defendant in this case, until this erroneous determination is discovered by some agency official. The fund is intact. Nobody has suffered as a result of this error. That being true, it is my idea of the law, and I think it is the law, that the courts have the inherent power to correct mistakes of that character. If they did not have, great injustice would happen to people. There is no reason why Bertha Bigheart Wheeler should be given this estate, if she is not entitled as a matter of law to receive it. And I do not think she is. She has not suffered any ill effects as a result of the error; the money has been held intact, it has not been distributed to any person; and I think the judgment of the county court was in all respects correct, and it will be confirmed, and that will be the judgment of this court; the judgment of the county court will be sustained."

Stripped of legal phraseology and technicalities, counsel for Bertha Bigheart Wheeler now contends that the county court of Osage county had no authority to set aside its decree of October 19, 1929, awarding Bertha Bigheart Wheeler one-twelfth of the estate of Rita Smith, deceased. Or, to state it another way, the controlling question presented to this court is: Where a judgment is rendered in county court through withholding the proper information, perjury on the part of the prevailing parties, or legal fraud practiced upon the court to the extent that there was no real hearing or contest at the time of trial, and where there are no intervening rights of innocent third parties, and where the administration proceedings are still pending and no disposition of the property has been made and no estoppel arises, does the county court have jurisdiction to vacate such an erroneous decree when the mistake is called to its attention? Our answer is in the affirmative.

An examination of the evidence introduced in the proceedings before the district judge on appeal discloses that after the controversy over the contest of the will of Rita Smith in the Supreme Court of Oklahoma and the appointment of an administrator, little attention was paid by any of the attorneys to the accuracy of the determination of heirship. M. L. Holcombe, attorney of record in this court now for Bertha Bigheart Wheeler, and attorney of record for her in both hearings for determination of heirship in the county court, testified on

cross-examination by Mr. Macdonald as follows:

"A. Yes, sir. Now, in further explanation of what Mr. McCoy questioned me about withholding the matter from the court, we had fought this litigation together, all of us jointly, as has been stated, and Mr. McCoy knew that there was several attorneys interested in the matter, Mr. Macdonald and Mr. Fink at the time, that matter came up for determination of heirs in the county court, but Mr. McCoy was taking the lead in the matter for all of us, because there had been a lot of controversy over some surcharges against some of the administrators under the special administrators, and Mr. McCoy was more familiar with that than anybody else, and had taken the lead all the way through, and we had all just kind of deferred to him as leading counsel in the case. When the matter came up then on the hearing for the determination of heirs, Frank and I talked there in court as to the findings of the court with reference to that, and I said, I think I said to Mr. McCoy, 'I suppose it is conceded that all these Indian heirs that have been parties to the record all the time are heirs, and entitled to inherit', Mr. McCoy, 'Well, so far as I know they are, but probably you had better put Mr. and Mrs. Wheeler on the stand and let her testify as to the relationship that she bears to Joseph Bigheart, deceased', he said, 'I am not familiar with that,' and I put her on for that sole purpose, and only for that, I never made the statement to McCoy, Macdonald or anybody else, or in court or anywhere, that Joe died after Rita Smith, I was always of the opinion that Bertha Bigheart was an heir and entitled to inherit, and I still think so."

Cross-examination by Mr. McCoy:

"Q. The only part of the case I handled was the financial end of the fee on the surcharges, wasn't it? A. Yes, that is what the litigation was over, the surcharges and you conducted that, then when it came up on final - decree for determination of heirs, there didn't seem to be any controversy. Q. I was not representing John Bigheart there at all, was I? A. I thought you were, you say now you are, and I thought also that you and Mr. Macdonald and Mr. Fink— Q. Doesn't the record show I only entered the appearance as representing J. W. Keith, joint administrator of the estate of Grace Bigheart, deceased? A. I don't know about that, you were paid quite a nice fee for representing the estate in those surcharges, and I think you were representing everybody there. Q. The fee I was paid for guardian ad litem of Annabelle Bigheart and Dorothy Shangrean, was it not? A. I don't know just how the rec-

ord shows, but we all recognized you as leading counsel in conducting the litigation on the surcharges for the benefit of the entire estate. Q. And the surcharges is the only thing I represented or took the lead in? A. That was the only controversy, there wasn't any controversy over the determination of heirs, the controversy was between the Indian heirs and the surcharges of the administrators and the special administrators. Q. And I only took the lead as to the matter of surcharges? A. That is all there was any controversy over. Q. And Mr. Holcombe, when you asked about the heirship, didn't I tell you that I wasn't familiar with that, and that you gentlemen had been in this litigation all the time and that I didn't know about it and I would rather you would put on your proof? A. You told me you were not familiar with the relationship of Bertha to Joe Bigheart and I had better offer proof on it, and that is all I asked about. Q. Didn't I tell you that I didn't know the heirship of any of these people, and that all I knew about it was the surcharges?' A. You told me you wasn't acquainted with Bertha and didn't know her relationship to the family, and I had better prove that, and I did."

It is obvious from the record that the various attorneys in the case took the heirship for granted; that there was no contest on the part of John Bigheart, Jr., a full-blood Osage Indian, who was probably much more lax in looking after his interest than some of his white brethren in the same case. Obviously, he was represented at most by an announced appearance of attorneys only. C. S. Macdonald, one of the attorneys who had been in the litigation since the death of Rita Smith, testified, in substance, that his first employment started in the case in 1923; that it was continuous in the case until the decree was entered October 19, 1929; that the firm of Holcombe & Lohman consolidated with his firm, and that all acted together during the period of the litigation in the Supreme Court; that during all those years, and up until the county court determined the heirs at law in 1929, there was no evidence offered and no question raised as to who was entitled to participate in the estate of Rita Smith, and that he accepted the statement of his partner, M. L. Holcombe, as to the date of the death of Joseph Bigheart. On cross-examination by Mr. Holcombe, he testified as follows:

"Q. And on the hearing, Mr. Macdonald, for the determination of the heirs of Rita Smith, no question was made by John Bigheart or you or anybody else that Bertha

Bigheart was not an heir, was there? A. No, we accepted—I never investigated at all, I accepted your statement that she was an heir to Joseph Bigheart's interest and I accepted—I took for granted that Joseph Bigheart inherited and that of course would carry with it that Joseph Bigheart died subsequent to Rita Smith. * * * A. It was never questioned because we accepted your statement that she was an heir, and in all those proceedings the question of heirship never arose, it was not a question to be determined."

The record discloses that there was, in fact, no adversary trial or decision of the issues in the county court at the first hearing, October 19, 1929, as to whether or not John Bigheart, Jr., inherited to the exclusion of Bertha Wheeler. We will go no further than the trial court with regard to the question of fraud. Certainly, the confidence expressed by Mr. Macdonald in the statement of Mr. Holcombe lulled him into a failure to contest in behalf of his client. Looked at from any angle, this would be an "unavoidable casualty" or "misfortune" to John Bigheart, Jr. And even though no intentional fraud appears affirmatively, the result of the decree is the same. That is, that the facts were withheld from the court, which would have compelled a different decree from that rendered. Certainly, this operates as a legal fraud upon the court. We point out, further, the decree attacked was not O. K.'d by the various attorneys. Apparently, little effort was made by any of the parties, except Mr. Holcombe, in settling the heirship question. Hence, the question presents itself: Where there has been no real contest at the time of the hearing on the decree of heirship, and where attention is later called to the county court of an error of law in the decree, does the county court have authority to correct the same? In Oklahoma there is no such thing as terms of court in probate matters. Section 3961, O. S. 1931, provides:

"In each county, commencing on the first Mondays of January, April, July and October of each year, except as otherwise herein provided, county court shall convene at the county seat and continue in session so long as business may require; provided, that said courts shall always be open and in session for the transaction of all probate business in their respective counties."

In the case of Southern Surety Co. v. Chambers, 72 Okla. 307, 180 P. 711, paragraph 2 of the syllabus is as follows:

"The county courts, under the provisions of section 1823, Rev. Laws, 1910, are always in session for the transaction of probate business, and that portion of this section of the statute providing for terms of the county courts has no application to the probate jurisdiction of the courts."

In the case of Snell v. Canard, 95 Okla. 145, 218 P. 813, this court said:

"It must be borne in mind that 'the court having jurisdiction of the settlement of the estate' of Sam Lucas was always in session. We have no desire to conflict with, much less to overrule, those cases which draw a correct distinction between a court and the judge thereof, and limit the power of courts to act in vacation; but the law says there shall be no vacation in the county court in probate matters, consequently, the 'court having jurisdiction of the settlement of the estate' of Sam Lucas is always in session."

At this point we deem it important to emphasize the fact that the funds in the controversy have been held intact; that no rights of innocent third parties have intervened, and that all parties are in statu quo as of the date of the rendition of the decree of heirship on October 19, 1929. Because of these facts, and the fact that there are no terms of the county court in probate matters, it follows that John Bigheart, Jr.'s petition to set aside a decree does not fall in the category of a petition to vacate judgment filed after the term at which the judgment was rendered. Such contention is not applicable to the present state of facts, as the term at which the judgment is rendered has not passed. The petition to correct the erroneous decree under the facts presented here is as effective as if the error had been discovered one day after its filing and petition then filed.

We are not unmindful of the rule that a judgment based upon conflicting evidence or perjured testimony alone should not be set aside or annulled. The facts in the case at bar present an exception to this general rule. As was said in the case of Bacon v. Bacon (Cal.) 89 P. 317:

"The general rule as to what constitutes extrinsic fraud or mistake is clearly stated by the United States Supreme Court in U. S. v. Throckmorton, 98 U. S. 65, 25 L. Ed. 93. After stating the general rule that a bill in equity will not lie to set aside a judgment obtained by means of perjured testimony, or forged documents, introduced in evidence in support of a contested issue of fact, that court says: 'But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to the suit, there was, in fact, no adversary trial or decision of the issue in the case. Where the unsuc-

cessful party has been prevented from exhibiting fully his case by fraud or deception practiced upon him by his opponent, as by keeping him away from court; a false promise of a compromise; or where the defendant had never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interests to the other side—these and similar cases which show that there never has been a real contest at the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside the former judgment or decree and open the case for a new and fair hearing.' This statement was approved by this court in Pico v. Cohn, 91 Cal. 135, 25 P. 970, 27 P. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159. These cases refer to fraud as the preventing cause of the real contest, adversary trial, or fair submission. The cases related to fraud, and hence the discussion was confined to that subject, but the rule is the same where the preventing cause is mistake, influencing the action, or inaction, of the injured party. * * .* The gravamen of the rule thus expressed lies in the fact that 'the successful party has been prevented from exhibiting fully his case,' and, consequently, that there has been 'no adversary trial or decision of the issue', no 'real contest at the trial', or, as stated in Pico v. Cohn, no 'fair submission of the controversy.' Where the unsuccessful party has been thus hindered, he is not to be refused relief on the ground that the fact on which his defense or claim in the original action depended, and by which he expects to bring about a different result in the new suit for equitable relief, was technically in issue in the original action or proceeding, or was necessarily decided by the court in that action and concluded by the original judgment beyond reach on collateral inquiry. It is because such judgment does conclude all parties so long as it stands unrevoked and unaffected by any direct attack, not only as to the facts actually in issue, but also as to all facts not in issue, but which might constitute a possible defense, and is therefore, injurious, that there is ground for the interposition of equity to give this form of relief. To deny relief where the fact is technically in issue, though, by reason of the mistake or fraud, not controverted or contested at the trial or hearing, would be to destroy the equitable remedy in a large class of cases in which it has been hitherto administered."

While the above was an equity case, yet any extrinsic fraud practiced upon the county court, which would operate to cause no "adversary trial or decision of the issue," or "no real contest at the trial" to be had, would justify our county courts in employing their legal powers to vacate their judgment just as much as it would justify a court of equity from interfering with the judgment of some other court. The facts herein cause this case to fall within the exception to the general rule.

In the case of Caulk v. Lowe, 74 Okla. 191, 178 P. 101, this court held:

"It cannot be questioned that under sections 5267 to 5275, Revised Laws, inclusive, the county court had jurisdiction to set aside its orders and judgment for fraud practiced by the successful party in obtaining such orders or judgment.

."The weight of evidence disclosed that fraud was practiced by the defendant by withholding from the county court information had by Fannie M. Caulk and Ott Caulk at the time the application was made for the appointment of Ott Caulk as administrator, and at all the subsequent proceedings in the case, that Mary C. Lowe was the daughter of the decedent and an heir of his estate, which resulted in having the said Fannie M. Caulk wrongfully adjudged the sole heir of Judge K. Clinghan, deceased."

See, also, Forgy v. Lamphear, 144 Okla. 245, 291 P. 83.

It is undisputed in the record that Joseph Bigheart died prior to Rita Smith. It is undisputed that having died prior to Rita Smith, plaintiff in error, Bertha Bigheart Wheeler, is not entitled as a matter of law to inherit as set out in the decree of October 19, 1929. She relies solely on a technicality of law to prevail. The purpose of court judgments is that justice may prevail, not injustice, through technicalities or frauds. As was said by Cicero, "The foundations of justice are that no man shall suffer wrong." The county court in its last decree giving John Bigheart, Jr., that which was his, was a correct decree. The judgment of the district court affirming that decree will be affirmed here.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and BAYLESS, JJ., concur. ANDREWS, J., absent. WELCH, J., dissents.