### OLD NAT. LIFE INS. CO. et al. v. PATILLO et al.

### No. 6208.

Court of Civil Appeals of Texas. Texarkana.
May 11, 1946.

Rehearing Denied May 30, 1946.

Barney A. Garrett, of Waco, and Harrington & Harrington and J. W. Falvey, Jr., all of Longview, for appellants.

Hurst & Burke, of Longview, for appellees.

WILLIAMS, Justice.

This is a suit in equity, as a bill of review, to set aside on grounds of alleged fraud a judgment theretofore rendered in the District Court of Gregg County, and to retry all of the issues determined in the former suit on July 31, 1940, in the same court, styled Joe Patillo et al. v. Old Faithful Life Insurance Company et al.

A deed dated May 7, 1937, recorded in Gregg County Deed Records on May 19, 1937, executed by J. H. Flournoy, Charlie Barber and Frank Neal, purporting to act as trustees of Lodge No. 5090 of the Grand United Order of Odd Fellows of the Grand Lodge of Texas, located in Longview, for the recited consideration of $800 cash in hand paid by Zuma A. Flournoy purports to convey to the latter Lot No. 7 in Block 211 of the City of Longview (the lodge hall), the title to which is the subject of controversy. A deed of trust lien covering above premises executed by J. H. Flournoy and Zuma Flournoy, his wife, on March 29, 1938, and filed for record May 7, 1938, to secure the payment of a $12,000 promissory note payable to one T. L. Lockhart, was shortly thereafter assigned to Old Faithful Insurance Company, and forthwith recorded in Gregg County Deed Records.

In the former suit filed October 7, 1938, by Joe Patillo and eight others against J. H. Flournoy, his wife, Charlie Barber, Frank Neal and Old Faithful Life Insurance Company, plaintiffs, after pleading a trespass to try title action and recordation of above-mentioned deed and deed of trust, alleged that each was a simulated transac-

692

tion and sought judgment cancelling both instruments and for removal of cloud on title, for sale and partition of proceeds. Plaintiffs further alleged that in the year 1936, the lodge disbanded through inactivity in accordance with its charter with the implied agreement upon the part of its membership at the time of such dissolution that the plaintiffs and the three persons named defendants were active members in good financial standing and constituted the full membership and as such members the eleven were the owners of the premises at the time the deed into Zuma Flournoy was illegally and without lawful authority executed by the purported trustees of the lodge.

Modern Mutual Health and Accident Insurance Company (now Old National Life Insurance Company by amendment to its charter changing its name) filed its plea of intervention in that suit alleging that New Glory Lodge No. 5090 was part of, and attached to District Grand Lodge No. 25, Grand United Order of Odd Fellows, a fraternal benefit society organized and operated under the laws of Texas and under the constitution and by-laws of said District Grand Lodge and the laws of Texas; that New Glory Lodge having demised, the District Grand Lodge had the right to sell and convey the property, and had sold and conveyed same, and intervenor became the owner of same through mesne conveyance from the District Grand Lodge; and further alleged that the plaintiffs and defendants as former members of the lodge had no right, title or interest in the lodge property; and sought judgment for title to the property and the rents collected therefrom. The Flournoys answered with a plea of not guilty, general and special denials and in addition plead in detail the various alleged advances made by the Flournoys in the erection and repairs of the lodge hall and the conveyance in satisfaction of the Flournoys' alleged liens and debts.

The former trial had to the court resulted in a judgment that the plaintiffs and intervenors take nothing. In the findings of fact filed by the trial court in the former suit, the court found that in June, 1931, the lodge authorized its trustees to execute

a note in the name of the lodge in favor of one Robert Walsh for $3,800 for the construction of the lodge hall on above land acquired by the lodge in 1903, and to execute a deed of trust on the premises to secure its payment as follows: $500 when work begins, $800 during construction and $2,500 in monthly payments of $50 each; that the note and deed were executed; that Zuma A. Flournoy advanced $800; that J. H. Flournoy purchased the $2,500 balance due on above note, which was assigned to him by Walsh; that in May, 1937, the lodge was indebted to Zuma A. Flournoy in the sum of $800 plus $82 interest, and to J. H. Flournoy the principal sum of $1,687.50; and that at a regular meeting the lodge voted to convey the premises to Zuma A. Flournoy for the consideration of the cancellation of the indebtedness held by Zuma and J. H. Flournoy and authorized its duly elected and acting trustees, J. H. Flournoy, Charlie Barber and Frank Neal to execute above-mentioned deed. The court found that New Glory Lodge is not now, nor ever became voluntarily dissolved, defunct or demised; and that Joe Patillo and the other eight plaintiffs were at one time members of the lodge, but during the year 1936, voluntarily dropped their membership and have not since that time been members. Other findings relate to the alleged jurisdiction, rights and titles asserted by the Insurance Company under its constitution, by-laws and charter of District Grand Lodge No. 25. Old Faithful will not be further noticed, having released its lien in 1941. No appeal was perfected from that judgment.

The present suit was filed on March 8, 1943, by substantially the same plaintiffs, for themselves and for New Glory Lodge No. 5090, against Calvin Neal, the three named as defendants in the former suit, and all other parties intervenors in the former suit in the nature of a bill of review to reopen, set aside and nullify the judgment, findings of fact, and conclusions of law, rendered in the former suit, on account of alleged fraudulent concealment, fraud, perjury, subornation of perjury and intimidation of witnesses by the defendants, J. H. Flournoy, Zuma Flournoy, Charlie Barber and Calvin Neal, in the former

trial, as a result of which, an alleged wrongful judgment was rendered for defendants, J. H. and Zuma Flournoy.

Plaintiffs alleged that J. H. Flournoy, the "kingfish", Charlie Barber, C. C. Neal and Frank Neal, occupying respectively the offices in the lodge of Noble Grand, Past Noble Father, Under-Secretary and Treasurer, and Zuma Flournoy, entered into a conspiracy to cheat and swindle the local lodge and plaintiffs out of the lodge property by wrongfully excluding the plaintiffs from the lodge; by concealing the true minutes, bank statements, bank deposits, checks and records of the lodge from them; and preparing a book of false minutes purporting to show that New Glory Lodge No. 5090 was largely indebted to Flournoy and his wife, and authorizing a conveyance of the lodge property to Zuma A. Flournoy in satisfaction and in payment of the alleged debts, with the promise and assurance of J. H. Flournoy that all the rents and revenues from the lodge property would be divided among his co-conspirators and at the proper time, his wife would re-convey the lodge property to the co-conspirators or sell same and divide the money with them; that the plaintiffs were wrongfully excluded from the lodge and thereafter filed the former suit to recover the lodge property; and that J. H. Flournoy and his co-conspirators were defendants in said suit and carried out said conspiracy by fraudulently and wilfully concealing the true minutes of the lodge, bank statements, bank checks and all records, and introducing in evidence a false minute book, so prepared for the purpose, showing the supposed facts above stated and supported their wrongful acts by perjury, subornation of perjury, intimidation of witnesses by threats, and fraud; and by reason thereof the plaintiffs lost their suit, and judgment was rendered in favor of defendants in said suit; that thereafter J. H. Flournoy double-crossed his co-conspirators by refusing to divide the spoils and was seeking to appropriate the entire lodge property for himself, and the rents and revenues therefrom.

The answer of Old National Life Insurance Company follows substantially the allegations of fraud set up in plaintiffs' pleadings and by cross-action plead a trespass to try title action against plaintiffs and all other defendants. Appellants, J. H. Flournoy and Zuma Flournoy, filed their answer consisting of special exceptions, denials, pleas in bar and res judicata by reason of the judgment rendered in the former suit, both by exception and plea challenged the plaintiffs' right to recover as individuals; and filed their cross-action to remove cloud from title by reason of claims asserted in this suit. Barber and Neal, the other named defendants, made no answer in either suit.

Grounded upon jury findings which sustained above allegations of fraud, fraudulent concealment and perjury practiced in the former trial, and findings which did not sustain appellant insurance company in its position taken as to its jurisdiction and title over the property by reason of the laws of the grand lodge, the court entered judgment which vacated and set aside the findings of fact, conclusions of law and decree entered in the former trial; adjudged that plaintiffs had been wrongfully ejected from the lodge, reinstated them as members in good standing; adjudged that the lodge had never been demised or dissolved; cancelled the deed into Zuma Flournoy; adjudged that title to property had been invested in the lodge at all times since its purchase in 1903, and decreed that plaintiffs for and in behalf of the lodge do have and recover from all defendants and intervenors the title and possession of the land and premises, with recovery against Flournoy in damages for rentals.

Prior to the former trial, Calvin Neal and other officers of the lodge were served with a subpoena duces tecum to produce at that trial all the records of the lodge. Calvin Neal, the under-secretary, was used as a witness for plaintiffs. A set of minutes was produced which he identified then as the true minutes of the lodge. He now identifies a "Handy Account Book" as containing the true minutes of the lodge and testified that his testimony given in the former trial was false and untrue, and all this was wantonly and wilfully done pursuant to a scheme entered into between him, Flournoy, Barber and Frank Neal to defeat plaintiffs in their suit to set aside the deed into Zuma Flournoy, whereby they

later would divide the spoils which the Flournoys have refused to do. His present testimony was given by deposition taken in California more than four years subsequent to the former trial, the minute book (Handy Account Book) being attached to his deposition. It is to be observed that one page of this book contains a resolution, written with pen and ink, dated April 23, 1937 (a particular meeting of importance to the rights of the parties), which purports to give J. H. Flournoy, Charles Barber and Frank Neal, as trustees, "power to borrow money on said property"; and on the opposite page is a copy of another resolution, typewritten on a sheet of paper and attached thereto, bearing the same date, which purports to authorize the same trustees to convey the property to Zuma Flournoy. All other recitals in the book were written with a lead pencil. The set of minutes identified in the former trial has been misplaced or lost by one of plaintiffs' attorneys who is not now connected with the case and who has moved from Texas. Plaintiffs vigorously attacked the genuineness of that minute book and the truthfulness of its recitals in the former trial as defendants have attacked the present one.

In both trials extensive evidence dealt with rentals and revenue from the property, who paid who, and what became of the money; improvements, changes, and repairs to the property; taxes and other advances made by the Flournoys; and the extent of repayments to J. H. Flournoy to be credited on his lien note and those for other advances. Many cancelled checks bearing the endorsement of J. H. Flournoy, as payee, were introduced in the present trial, when only one such check was introduced in the former trial. Many of these checks carry notation, "note"; many did not indicate what they were given for, and others carried "Memo", "Taxes", "Insurance", "printing", "labor", "account", "borrowed money", etc. Frank Neal, the treasurer of the lodge, was in attendance on court but was not used as a witness in either trial. The record is silent whether these checks were available to plaintiffs at the former trial.

In both trials the respective litigants offered evidence in support of their respective positions. Plaintiffs and the insurance company raised and litigated to decision in the former trial the same or similar issues as here sought to be relitigated. In the former trial they asserted that the deed was a fraud; that the parties had gotten together to give the property to Zuma and to beat the Grand Lodge out of it; that J. H. Flournoy had been paid back his money; and that the minute book then offered had been fabricated.

█ The acts of fraud as alleged in the petition upon which plaintiffs and appellant insurance company predicate their right to a bill of review, and the evidence and findings of the jury in support of said allegations when summed up are: (1) Perjured testimony; (2) the introduction of a false minute book; and (3) the concealment of the true minute book and cancelled checks, pursuant to a scheme entered into prior to the former trial.

We are in accord with the first four points presented by the appellants Flournoy and wife, wherein they assert that above alleged acts constitute at most intrinsic fraud, and as such did not constitute a basis for or entitle plaintiffs or appellant insurance company to a bill of review. Crouch v. McGaw, 134 Tex. 633, 138 S.W. 2d 94; United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Graybeal Co. v. Cook, 16 Cal.App.2d 231, 60 P.2d 525; Pico v. Cohn, 91 Cal. 129, 25 P. 970, 27 P. 537, 13 L.R.A. 336, 25 Am.St.Rep. 159; Freeman, Judgments, 5th Ed., Vol. 3, Sec. 1241; Elder v. Byrd-Frost, Inc., Tex.Civ.App., 110 S.W.2d 172; 25 T.J., Judgments, Sec. 201; 15 R.C.L. page 705; Reed v. Bryant, Tex.Civ.App., 291 S.W. 605.

█ "Fraud is classified as intrinsic or extrinsic." "Intrinsic fraud does not furnish a ground, in an independent suit brought for that purpose, for setting aside a judgment." "Included in the term 'intrinsic fraud' are false testimony, fraudulent instruments, and any fraudulent matter that was presented and considered in rendering judgment." "The rule is universally recognized that alleged perjury of a witness upon a trial of a contested issue, to which the opposing party had the opportunity to refute, will not furnish a basis for

setting aside the judgment in a bill of review." [134 Tex. 633, 138 S.W.2d 97.] Crouch v. McGaw, supra, citing with approval, among several cases, that of United States v. Throckmorton, supra, which involved a grant of land that had been fraudulently antedated and introduced in evidence on the former trial. "The alleged conspiracy and fraud consisting of procuring and offering in evidence a false ledger sheet of the account in question is clearly intrinsic and collateral in its nature, and therefore it may not become the basis of facts which will warrant the canceling of a judgment on that account." Graybeal Co. v. Cook, supra [16 Cal.App.2d 231, 60 P.2d 528]. In 25 Tex.Jur. p. 607, quoted with approval in Elder v. Byrd-Frost, Inc., supra [110 S.W.2d 175], it is said: "Certainly a judgment will not be vacated for fraud when the particular fraud in question was in issue in the original proceedings." "The procuring of a judgment by perjury, or subornation of perjury, is doubtless a fraud, and such a fraud as would induce equity to grant relief, were it not for the fact that its existence can rarely or never be ascertained otherwise than by trying anew an issue already tried in the former action. Whenever an issue exists in any action or proceeding, each of the parties should anticipate that his adversary will offer evidence to support his side of it, and should be prepared to meet such evidence with counter proofs." Freeman, Judgments, supra. "It may be safely asserted that a witness does not often deliberately perjure himself without being induced thereto by some fraudulent or corrupt practice on the part of him who gets the advantage of the perjury." Pico v. Cohn, supra [91 Cal. 129, 25 P. 972]. "The mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which were afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." United States v. Throckmorton, supra. The soundness of this reason is observed in its application to this record of highly contradictory evidence, for to sustain the present judgment would not necessarily foreclose a future suit for a bill of review to retry the same issues, charging extrinsic fraud in the present trial. The testimony of the colored brethren on both sides of this litigation given in the trials reflect the characters in the well-known radio skit of "Amos and Andy," all answering to either "Andy" or "Kingfish" without an "Amos" in the bunch.

No adversary proceeding whatever was had in McMurry v. McMurry, 67 Tex. 665, 4 S.W. 357; Mills v. Baird, Tex.Civ.App., 147 S.W.2d 312, 313, and the other cases cited by appellees, to sustain the present judgment. In our opinion, these decisions turned on the application of extrinsic fraud to the facts involved.

Any observation on the other points presented are pretermitted in view of the conclusions above reached. Appellant Insurance Company is in exactly the same position as the plaintiffs, in so far as sustaining the bill of review is concerned.

The judgment of the trial court which decrees that appellant Insurance Company take nothing is affirmed; and that part of the judgment which awards title and possession of the property with damages to plaintiffs in behalf of the lodge is reversed and judgment is here rendered that they take nothing as to defendants J. H. and Zuma Flournoy.

Affirmed in part and reversed and rendered in part.